Levert et al. *vs.* Redwood.

LEVERT, et al. *vs.* REDWOOD.

1. Where a mortgage is given, to secure the payment of four several promissory notes, and a bill of foreclosure is filed by the mortgagee, which states that the three notes last due remain unpaid, and no mention is further made of the note which arrived first at maturity—Chancery will infer that it was paid before the filing of the bill.

2. If otherwise, and the note belongs to some other person, than the complainant, at the time of filing the bill, and such a circumstance is esteemed important to the defendant ; it is his duty to present the matter, in his answer;—such an allegation in the complainant's bill, is wholly unnecessry.

3. And where one of the notes is not due at the hearing of the case, and the bill is taken *pro confesso,* Chancery will order so much of the mortgaged premises to be sold, as will be sufficient to pay off the notes that are past due, together with the interest and costs ; and the decree will stand as security for payment of the amount not yet due, with leave to the mortgagee, to obtain an order for the sale of the morgaged premises, when the remaining note reaches maturity.

4. The practice of the court of Chancery in this State, prescribes

Levert et al. *vs.* Redwood.

no particular form of *subpœna ad respondendum ;* it is suf-ficient, if the party on whom it is served, is informed by it, that a suit is instituted against him, and that a copy of the bill exhibited, is furnished to him at the time of the service.

5. Where a decree is made, more than thirty days after service of the subpœna, with a copy of the bill, on the defendant; there is no error, so far as reference is had to the time of ma-king the decree.

6. Courts of Chancery possess the power to examine witnesses, *viva voce,* for the purpose of proving written instruments, and the Chancellor may state what the evidence of the witnesses so examined, is.

7. Such written instruments need not be set out in the record and decree in *hæc verba.*

8. *It seems,* that the same degree of proof is not required to sup-port a decree *pro confesso,* as in other cases.

9. A reference to the master will not authorise a report by him more extensive than the allegations and proofs warrant; and a report which is erroneous on its face, may be inquired into, without any exception taken.

10.Where the evidence, which is relied on to support the allega-tions of a bill, is all written, and a decree can be rendered on its production, without difficulty,—a reference to the master is unnecessary.

Error to the Circuit court of Mobile, exercising Chan-cery jurisdiction.

Bill of foreclosure, tried by *Harris, J.*

This was a bill in equity, exhibited by Richard H. Redwood, in the Circuit court of Mobile county, against Henry S. Levert, Samuel A. Roberts, John Mayrant, jr. and John W. Freeman. It set forth an indenture of mortgage, executed to secure the payment of certain promissory notes, therein described.

Levert et al. *vs.* Redwood.

The mortgage bore date, (as alleged by the bill) the twenty-fifth September, eighteen hundred and thirty-five, and was admitted to record, and duly recorded, in the office of the clerk of the County court of Mobile county, in which county the land is situate. The notes intended to be secured were four in number, all drawn by Levert, payable to his own order, and by him indorsed, negotiable and payable at the Branch of the Bank of the State of Alabama at Mobile,—all bearing even date with the indenture of mortgage—due at the times, and for the amounts which follow :

The first, due the 18th May, 1836, for $641 08
Second, " " 18th " 1837, " 683 95
Third, " " 18th " 1838, " 726 83
Fourth, " " 18th " 1839, " 760 70

The bill charged a default in the payment of the second note, whereby the mortgage became absolute ; and alleged, that Levert, after the execution of the indenture of mortgage, conveyed the premises covered by it, to Roberts, who afterwards conveyed a part of the same to Mayrant, jr., who afterwards conveyed to Freeman.— The bill prayed that an account might be taken of what was due to the complainant—a decree that it might be paid to him, or the defendants forever barred, and foreclosed of all equity of redemption,—and that a sale of the premises mortgaged, might be made to satisfy the sum ascertained to be due—and concluded with the usual prayer, for general relief.

The bill was filed on the thirty-first October, eighteen hundred and thirty-seven, and on the same day, a writ of subpœna issued, directed to Levert, Roberts and May-

9 P                    11

rant, commanding them to appear at the then next term of the Circuit court of Mobile county, and answer a bill of complaint filed against them, by Richard H. Redwood, "a copy of which bill," the subpœna informed them, "would be furnished by the sheriff." This subpœna was returned executed, on the first of November, eighteen hundred and thirty-seven, on Levert, by leaving a copy of the bill, as furnished by the clerk, and also a copy of the subpœna: the other defendants not found.

At the term of the Circuit court, next after the bill was filed, an alias subpœna was ordered against Roberts and Mayrant and Levert, to answer in thirty days, or the bill to be taken *pro confesso.*

On the twenty-fifth January, eighteen hundred and thirty-eight, a subpœna was issued, directed to Roberts and Mayrant, containing a similar recital as in the previous subpœna, that the bill was filed by Redwood against *them*—omitting any mention of Levert or Freeman; but informing them, that a copy of the bill would be furnished by the sheriff. This subpœna was executed on Roberts, the nineteenth of February, eighteen hundred and thirty-eight, and on Mayrant, on the twenty-third of the same month, a copy of the bill and subpœna being left with them.

On the third day of April, eighteen hundred and thirty-eight, another subpœna was sued out, directed to all the defendants—describing the bill, as exhibited by Redwood against them, and that, on the same day, was served on Freeman, and he furnished with a copy of the bill and subpœna.

At the term of the Circuit court, begun to be held on

the *fourth Monday of April*, eighteen hundred and thirty-eight, a decree was rendered, in these words:

"Richard H. Redwood, complainant, *vs.* Henry S. Levert, John Mayrant, Samuel A. Roberts, and John W. Freeman, defendants. And now at this day of the said term of the court, appeared the said Richard H. Redwood, complainant, by John H. Jones, his solicitor; and, it appearing to the satisfaction of the court, that the said Henry S. Levert, John Mayrant, jr., Samuel A. Roberts, and John W. Freeman, have been served with subpœnas, issuing out of our court; and, the said defendants having failed to plead, answer or demur, within the time prescribed by law, on motion of complainant, by his solicitor, the said bill of complaint, of the said Richard H. Redwood, and the matters therein stated and alleged, it is ordered, adjudged, and decreed, be taken as confessed. And, thereupon, the said Richard H. Redwood, by his said solicitor, produced in court, the said indenture of mortgage, with the said certificates, in the bill of complaint mentioned; and also, the three last promissory notes, mentioned in the said bill of complaint, to wit:—one note, due the eighteenth May, A. D. one thousand eight hundred and thirty-seven, for six hundred and eighty-three 95-100 dollars; one note, due the eighteenth May, A. D. one thousand eight hundred and thirty-eight, for seven hundred and twenty-six 83-100 dollars; one note, due the eighteenth May, A. D. one thousand eight hundred and thirty-nine, for seven hundred and sixty-nine 70-100 dollars, and proved the execution of said promissory notes, and mortgage,—all of which are dated the twenty-fifth day of September, eighteen hun-

dred and thirty-five. · And thereupon, it is ordered, adjudged and decreed, by the court, that the said bill of complaint, indenture of mortgage, and promissory notes, be referred to Malcom J. M'Rae, clerk of this court, and acting as master in Chancery, to take an account of all, what is due to the complainant, for principal and interest, on the said mortgage and promissory notes, and to tax costs of said suit—and to make report thereof, at some convenient day, during the present sitting of this court. And thereupon, on the seventh day of June, A. D. one thousand eight hundred and thirty-eight, being another day of the present sitting of the said court, came the said Malcom J. M'Rae, Esq., acting as master in this court, and made his report—whereby it appears, that the said Henry S. Levert, John Mayrant, Samuel A. Roberts, and John W. Freeman, are justly indebted to the said Richard H. Redwood, on said indenture of mortgage, and said promissory notes, the sum of two thousand, two hundred and forty-five dollars and sixteen cents, for principal and interest: which said report is hereby accepted, and ordered to be filed and recorded in this court; and to which said report of the said master, reference is hereby made, as forming a part of this decree.

It is therefore ordered, adjudged, and decreed, that the said Henry S. Levert, John Mayrant, junior, Samuel A. Roberts and John W. Freeman, do pay to the said Richard H. Redwood, said complainant, the said sum of two thousand two hundred and forty-five dollars and sixteen cents, so reported to be due him on the said mortgage and the said notes, on or before the first day of August next; and in case they, the said Henry S. Levert, John

Levert et al. *vs.* Redwood.

Mayrant, junior, Samuel A. Roberts and John W. Freeman, fail to pay the said sum of two thousand two hundred and forty-five dollars and sixteen cents, on said first day of August next, it is ordered, adjudged and decreed, that the said Henry S. Levert, John Mayrant, junior, Samuel A. Roberts and John W. Freeman, and their heirs, be forever debarred and foreclosed of and from all equity of redemption, of, in and to said mortgaged premises described in the said complainant's bill, and the master aforesaid, and his successors in office, sell all of said lot of land and premises at public auction, for ready money, to the highest bidder, being governed in said sale by the law governing the sheriff of Mobile county in the sale of lands under execution of *fieri facias,* at common law. And it is further ordered, adjudged and decreed, that the said master execute to the purchaser of said mortgaged premises, a good and sufficient deed of sale and conveyance, and out of the proceeds of such sale, be it further ordered, that the said master pay said complainant's solicitor his costs of suit, to be by the master taxed, and the said sum of two thousand two hundred and forty-five dollars and sixteen cents, so reported to be due as aforesaid, and all lawful interest thereon accruing, and the balance shall pay into this court: and further, that the said master report what he shall have done in the premises, to the next term of this court."

The defendants named in this decree prosecuted their writ of error to this court, and have assigned for error—

1. That the two first subpœnas did not identify this cause, and were irregular; that the service thereof was irregular; and that all the subsequent proceedings founded thereon, were erroneous.

Levert et al. *vs*. Redwood.

2. That the third subpœna was not served more than thirty days before the term, and therefore the decree *pro confesso* rendered, was irregular.

3. The decree *pro confesso* was irregular, as no sufficient service appeared to warrant such a decree.

4. The court erred in hearing proof, not taken by deposition, or other proper manner.

5. The reference to the master was erroneous and unauthorised.

6. The decree was erroneous, in allowing and conferring the report of the master; in decreeing the sale of the whole of the property, when only a part was due; in requiring a sale absolute, without sufficient opportunity to redeem; in ordering the payment of too much, and before due; in decreeing, when neither the mortgage or notes were made a part of the record, and when it did not appear what had become of the first note mentioned in the bill; in decreeing a sale of the whole, when it did not appear necessary, and was unauthorised; and in barring all equity of redemption, and foreclosing the parties, as shewn in the record.

In the course of the argument, it was agreed by counsel, that the record should be considered as amended, so as to shew the decree *pro confesso*, was made at a day more than thirty days after the service of the subpœna on Freeman.

*Stewart*, for the plaintiff in error.
*Campbell*, contra.

GOLDTHWAITE, J.—The several points presented for

examination and revision by this case, can be best considered under the following arrangement:

1. The supposed defect in the frame of the bill, in not shewing the payment of the first note, intended to be secured by the mortgage, or otherwise accounting for it.

2. The irregularities which are supposed to exist in the form of the two first *subpœnas*, and that which is supposed to arise from the time when the decree was rendered.

3. The supposed error, in permitting the mortgage and notes to be proved *viva voce*, when the same were referred to the master, and the omission to set them out in *hæc verba* in the record.

4. The reference to the master, his report, and its effect.

5. The decree.

1. The complainant is the person to whom the mortgage and notes were executed, and does not make title, through any assignment, or claim any less interest, than the whole sum due thereon.   The presumptions which arise from the bill, are so far in his favor as to exclude the idea, that any other person is now the owner of the note, which came to maturity in May, eighteen hundred and thirty-six.   No other inference can justly be drawn from the allegations of the bill, than that this note was paid at the time, or since it became due, and previous to the institution of this suit.

If otherwise,—if this note belonged to another when this bill was filed, and it was important to any of the defendants, that this fact should have been disclosed and made known,—theirs, was the duty to have presented the

matter, by answer; and the Circuit court would not then have proceeded with the case, until the owner of it should have been made a party to the suit.   It is obvious that many, and perhaps perplexing questions may arise, when it becomes necessary to ascertain the rights of parties claiming interests as assignees of notes, secured as those appear to have been.   In this case, from the absence of all allegation to the contrary, we must presume that the note was paid to the complainant, before the institution of this suit.   If the complainant had averred this fact in his bill, and it should afterwards be shewn, that the fact was otherwise, it is not perceived how the rights of the true owner of the note can be affected, by a decree to which he is neither party or privy.   The allegation, therefore, would seem to be wholly unnecessary.

2. The two *subpœnas* first issued, omit the name of Freeman, one of the defendants; but we do not consider this as a matter of any importance whatever.   All the *subpœnas* command the individuals on whom service is made, to appear at the Circuit court, and answer the bill of the complainant; and they are further informed by the *subpœna*, that a copy of the bill of complaint, will be handed to them by the sheriff.   This officer returns, that he has served each of those defendants with the *subpœna*, and a copy of the bill.   We are not authorised to infer, that any other or different bill from the one exhibited, was served: after the service, the act of assembly imposed on the defendants, the duty of answering within a limited period.   According to the course of Chancery practice, as it prevailed in England until the year eigh-

Levert et al. *vs.* Redwood.

teen hundred and twenty-eight, a subpœna could regularly contain only the names of three defendants: since that date, it has been the practice to insert the name of one person only in the subpœna, and it is frequent that no other designation of the plaintiffs is made, if there is more than one, than of A B, and others—(Smith's Chan. Pr. 110.) It is not known, that the practice in this State has been so settled, as to prescribe any particular form for the subpœna. It is sufficient, in all cases, if the party on whom it is served, is informed by it, that a suit is instituted against him, and that a copy of the bill exhibited, is furnished to him at the time of service.

When the *subpœna*, accompanied with a copy of the bill, has been served, it then becomes the duty of the defendant "to file his answer or demurrer, within thirty days after such service, unless within that period, he shall obtain further time from the clerk of the court, or from a circuit judge, on reasonable cause shown, which further time, shall not extend beyond the first day of the next term, otherwise the bill shall be taken *pro confesso*, and the complainant, if he deem it necessary, may take an attachment to compel an answer"—(Aik. Dig. 287.)

The same act of assembly, of which a part has just been recited, evidently contemplates that the complainant may, if the court is in session when the thirty days have expired, at once proceed to a final determination of the cause, if the bill remain unanswered, for it provides, "in all cases where the *answer is filed* ten days before the sitting of the court, or the *bill is taken pro confesso*, for want of an answer, the cause shall be heard and determined at that term, if practicable, unless on good cause

9 P          12

Levert et al. *vs.* Redwood.

shewn, either party continue the same"—(Aiken's Digest, 288.)

Considering the decree, in this case, to shew that it was made more than thirty days after the service of the subpœna, with a copy of the bill, on the defendant, Freeman, there is no error, so far as reference is had to the time when it was made.

3. In relation to the supposed irregularity, in permitting the mortgage and notes to be proved *viva voce*, when the same was referred to the master, and the omission to set them out in *hæc verba*, in the transcript of the record.

That Courts of Chancery possess the power to examine witnesses *viva voce* at the hearing, even of contested suits, is well established by the many cases in which *exhibits* have been permitted to be proved in such manner. The rule was formerly limited to the proof of such papers as required no cross-examination—(Bloxton vs. Drewet, Prec. in Chan. 64; Eade vs. Lingood, 1 Atk. 203; Graves vs. Budgel, 1 Atk. 444; Pomfret vs. Lord Windsor, 2 Vesey, sr. 473; Turner vs. Burleigh, 17 Vesey, 354.) The modern doctrine, however, is, that this rule applies alike to *all written instruments:* but *viva voce* examinations are admitted at all times with great caution, and judges have evinced much reluctance to any extension of the practice, as tending to innovate on the established course of proceeding in such courts—(Graves vs. *Budgel*; Turner vs. Burleigh—*ubi sup.*) In the American Courts of Chancery, the modern rule seems to have obtained— (Consequa vs. Fanning, 2 John. Ch. R. 481; Emerson vs. Bulkley, 4 Hen. & Mun. 441; Barnes vs. Lee, 1 Bibb, 528; Hughes vs. Phelps, 3 Bibb, 178.)

Levert et al. *vs.* Redwood.

The competency of a Court of Chancery to administer an oath, was expressly determined in the case of one Aylet, who, having perjured himself in a *viva voce* examination before the Lord Chancellor, was prosecuted for, and convicted of perjury; and this case being carried to the House of Lords, the objection was unsuccessfully urged, that the Lord Chancellor had no power to administer an oath on such an examination—(Moore vs. Aylet, 2 Dick. 641; 2 Madd. Chan. 434.)

It would indeed be a source of infinite mischief, vexation and delay, if this power did not exist in the Chancery courts, as otherwise, many cases would be dismissed or delayed at the hearing, if it was discovered that the depositions of witnesses had omitted some matter by mistake, inadvertence or otherwise, essential to the prosecution or defence of the suit, and then for the first time discovered, and within the power of the party to supply. It cannot be supposed, that this power would be ever exercised for any other purpose than to advance the purposes of justice, and it may well be doubted, whether its exercise is not at all times a matter within the sound discretion of the chancellor, whenever the parties have proceeded to a hearing, and the evidence is strictly confined to the proof of written instruments, or other documentary evidence.

The power to admit *viva voce* evidence being shewn, it must follow, as a necessary consequence, that the chancellor must also have that of stating what the evidence is; and it would be wholly unnecessary for him to pursue the precise statements made by the witnesses, as such a course would frequently incumber the record with much immaterial and superfluous matter.

The objection in the present case is, that the mortgage and notes are not set out in *hæc verba*.  The chancellor states that the  mortgage and notes were  produced and proved in open court.  It would be a most unreasonable inference to draw from this statement, that they were other or variant from those described in the bill; and even in a *contested suit*, we should deem this statement sufficient, when referring to the identical papers which were the foundation of a suit.

In relation to the mode of establishing the allegations of a bill, when the same has been taken for confessed, for the want of an answer,—it seems clear, that it was anciently the rule, not to render a final decree, until the defendant had stood out all proceedings for a con-tempt, and  wilfully refused to answer — (Denton vs. Brown, Tothill, 38; Earl of Hertford vs. Gernard, ibid.; Earl of Oxford vs. Gooch, ibid.; Wood vs. Gough, Prec. in Chan. xiv; Aketan vs. Hall, Nels. 1; Nades vs. Battle, 2 Rep. Chan. 283; Anon. 2 Freeman, 127; Davis vs. Davis, 2 Atk. 23; Anon. 2 Freeman, 27; 2 Ch. Cas. 237.)  The modern practice is, to render a decree *pro confesso*, whenever the party is in wilful contempt, with-out proceeding to the last process of sequestration—(Pen-dergast vs. Laubergne, 2 Dick. 535; Sturges vs. Brown, 2 Merrivaile, 511; Att'y Gen. vs. Young, 3 Vesey, 209; Japling vs. Stuart, 4 Vesey, 619 ; Moss vs. Brown, 1 Ves. & B. 306 ; Landon vs. Ready, 1 Sim. & Stu. 44.)

Our statute has, in a great measure, introduced a new practice—and under it, it is wholly unnecessary to pro-ceed against a defendant, who is served with *subpœna*, and neglects and refuses to answer.  If the defendant

Levert et al. *vs.* Redwood.

does not file his answer or demurrer, within thirty days after the service of the *subpœna*, the bill may be taken for confessed, but "before a decree is pronounced, the court shall be satisfied by sufficient evidence of the justice of the complainants claim or demand"—(Aik. Dig. 288.) This seems to have been intended to abrogate the old rule, which authorised a decree on the allegations of the bill merely, and without any evidence; but the same degree of evidence, or the same manner of proof, is certainly not required, as would be if the case was at issue, for such a construction would leave the complainant without remedy in equity, when the transaction rests solely within the knowledge of the parties to the suit. It never could have been the intention of the general assembly, by this statute, to confer an advantage on a defendant, who might choose to stand in contempt of the process of the court; and such would be its effect, if the same degree of proof was required to support a decree *pro confesso,* as in other cases. Such was the view taken of this statute, in the case of Wilkins and Hall vs. Wilkins, 4 Porter, 245—and we are satisfied that the production of the notes and mortgage was "sufficient evidence of the justice of the complainants claim," to authorise a proper decree, and that it is wholly unnecessary to set them out in *hæc verba* in the record.

4. The effect of a reference to a master, was very fully considered in the case of Mussina vs. Bartlett & Waring, 8 Porter, 277,—and it was there determined, that his report was final and conclusive of all matters properly submitted to him. No question was made in that case, that the master exceeded his powers, or departed from the al-

legations of the bill; therefore, the case is not an authority to support the position now assumed by the defendant in error, that this court is not authorised to enquire into the subject matter of this report. The rule is very clear, that a reference will not authorise a report more extensive than the allegations and proofs will warrant— (Consequa vs. Fanning, 3 John. Ch. R. 527)—as is also that which declares, that a report, erroneous on its face, may be enquired into without any exception taken— (White vs. Johnson, 2 Mun. 285.) Here, the defendants could not have been permitted to go before the master, or even be heard before him, to make an exception according to the rule as laid down in Mussina vs. Bartlett & Waring, and would be entirely without relief, if they are not permitted to show error on the face of this report. The errors which exist in it are plain and apparent, and will be noticed hereafter. It is sufficient now to dismiss the report, with the remark, that, on the allegations of this bill, a reference was wholly unnecessary, as all the evidence to be applied to the case was written; on its production, a decree could have been rendered without any difficulty, by the court. A reference to the master, could only have been for the purpose of ascertaining the interest accrued on the notes due. If any special circumstances had been suggested by the complainant, as requiring a modification of the usual decree, it would then have been proper to have directed a reference, in order to ascertain and state those circumstances; or the order of reference might have directed the master to state the results of his examination, preparatory to a final decree.

Levert et al. *vs.* Redwood.

5. As to the decree.

This is erroneous in three respects:—First, it confirms the master's report, which is erroneous, in ascertaining the sum of two thousand two hundred and forty-five dollars and sixteen cents, to be due, when only the sum of six hundred and eighty-three 95-100 dollars, with interest from the eighteenth of May, eighteen hundred and thirty-seven, and the further sum of seven hundred and twenty-six 83-100 dollars, with interest from the eighteenth of May, eighteen hundred and thirty-eight, were then due. Secondly—in decrceing a sale of all the property mortgaged, when a sale of a part of it, might produce the sum due. Thirdly—in directing a sale, unless the sum ascertained to be due, by the erroneous report, was paid, when the sale should have been stayed, on the payment of a proper amount, with the costs of the suit.

It has been supposed, that the ordinary course, in all mortgage bills, is, to refer it to the master, to ascertain and report, if a sale of the whole or a part of the premises, will best suit the interests of the parties concerned. We are not aware that such a reference is to be made by the court of its own motion. The court below was not informed by the petition or suggestion of the complainant, that his interest could not be as well protected by a sale of a part, if that would produce the sum due; nor did the defendants, or either of them, answer and suggest, as they might, that they were so situated, with respect to the mortgaged property, as to require it to be sold in separate parcels; or that their interests would be best subserved, by a sale of the whole

Leveiι et al. *vs.* Redwood.

at one time.    As no representations were made by either
of the parties, the decree for the sale should have been
in the usual form, for a sale of so much as was suffi-
cient to pay the costs, debt due, and interest thereon, and
that the decree should stand as a security for the note,
to become due ; with liberty to the complainant to go
before the master, if the same should be in default at
maturity, and obtain a report as to the sum due, and pay-
able; to the end, that the Circuit court might thereupon;
order a further sale of the residue, to satisfy the said
debts and costs, attending the report and sale.

So much of the decree of the Circuit court, as confirms
the master's report, and ascertains the sum of two thou-
sand, two hundred and forty-four dollars and sixteen
cents to be due—so much as directs a sale of the whole
of the mortgaged premises, and so much as directs a sale
to be made, unless the sum so ascertained, is paid—is
reversed ; and this court, proceeding to render such de-
cree as the Circuit court should have rendered in the pre-
mises, doth order, adjudge, and decree as follows: That
is to say, unless the said Henry S. Levert, or the said
Samuel A. Roberts, John Mayrant, jr. and John W. Free-
man, shall pay and satisfy to the said complainant, the
sum of six hundred and eighty-three 95-100 dollars,
with interest from the eighteenth day of May, eighteen
hundred and thirty-seven, and the further sum of seven
hundred and twenty-six 83-100 dollars, with interest
from the eighteenth day of May, eighteen hundred and
thirty-eight, and the costs of. this suit, to be taxed, &c.,
on or before the first day of April next, then all the said
mortgaged premises, in the bill named, or so much there-

Levert et al. *vs.* Redwood.

of, as may be sufficient to pay and satisfy the sums a-foresaid, with interest, and the costs of this suit, in the Circuit court, shall be sold, by the master in Chancery, of the proper court, under the same notice as, by law, is required to be given by the sheriff, of sales of land : and the said master in Chancery is authorised and empowered to make good and sufficient deed or deeds, to convey the said premises, or so much thereof as it shall be necessary to sell, for the porpose aforesaid, to the purchaser or purchasers of the same. And it is further ordered, adjudged, and decreed, that if any part of the said premises, shall remain unsold, it shall be subject to the payment of the sum of seven hundred and sixty 70-100 dollars, due to the said complainant, on the eighteenth day of May, eighteen hundred and thirty-nine ; and if the same, or any part thereof, shall be due and unpaid, on the day last mentioned, the said complainant may go before the master in Chancery aforesaid, and obtain a report of the sum due—and thereupon, the Chancellor of the Southern Division of Alabama, shall award an order of sale for so much, and such part of the residue of the said mortgaged premises, as shall be sufficient to satisfy the sum last aforesaid, and all interest accrued thereon, together with the costs of the report and sale.— And it is further ordered, adjudged and decreed, that, whenever any sale of the said premises, or any part thereof, shall be had under this decree, all the right and title of the said defendants, or either of them, to redeem the said premises, or such part of the same, as shall be sold, shall wholly cease and determine—and they, in

9 P           13

and from the same, be forever barred and foreclosed.—
And it is further ordered, adjudged and decreed, that the
said complainant pay the costs of this court.