## HARKINS, ET AL. V. POPE, ET AL.

1. Where a tenant, under an agreement to pay an annual sum for rent, holds over without any new agreement, a continuance of the tenancy will be presumed and the obligation to pay rent will be inferred.
2. Under our statute authorizing administrators, &c. to rent the real estate of decedent, they are authorized to receive rent accruing after the death of the intestate, on a lease made in his lifetime, as he, if living, could recover for use and occupation.
3. An administrator may join with the heir in a bill for partition, as under the statute referred to, he has the authority to·lease the estate when divided.
4. In a bill for a partition, when the co-owners admit the title of each other, by leases between them, the derivation of title need not be stated, as where the defendant owner leases two thirds, leases the other third from the complainants.

Writ of Error to the Court of Chancery forth the 28th District.

THIS bill is by Harkins, Brahan, and the administrator, the widow and heirs at law, of one Suffrance against Pope, and the heirs at law of his deceased wife.

It charges, that in the lifetime of Suffrance, he, with Brahan and Harkins, were the owners of one third of the Eagle Hotel in the town of Florence, in this State, and that Pope owned one third in his own right, and another in trust for the heirs at law of his wife. The ownership of Harkins, &c. commenced on the 27th of July, 1839, under a conveyance to them, by one Posey, as trustee, constituted by a deed executed by one Pearsoll. At that time Pope was in possession, and used the property as a hotel. After the conveyance to them, Harkins, &c. leased their third to Pope, at $333 1-3 for the year 1840, and executed his note, which was paid, with the exception of some thirty or forty dollars. After the expiration of that year, Pope held the property without any express contract, but the complainants understood, from his holding over, without giving them notice on the 1st January,

1841, that the rent would be the same, and they assented to his having the use of their third at that rate. Pope occupied the premises for nearly all the year 1841, but towards its close, on the 26th December, the hotel was destroyed by fire. The bill charges from these facts, that Pope owes the complainants one full year's rent, and the unpaid balance due for the other year.

The bill then sets out, that Pope, notwithstanding his admission of the right of the complainants to one third part of the premises, on the 28th September, 1841, entered into an agreement with one Pearsoll, to lease him the whole of the property for a term of four years, to commence from the 1st January then next, for $4,500; agreeing to lease at the same time a part of the furniture of the hotel, and another house and lot for the same consideration. This sum of $4,500 was fully paid by Pearsoll to Pope, not in money, but in real estate, estimated by the parties at that sum. This property is described in the bill, which charges, 'it was conveyed by Pearsoll to Pope, and that the furniture, and other lot leased, were of inconsiderable yearly value.

After the destruction of the building by fire, Pope paid Pearsoll $700 as the consideration for rescinding the contract of lease before mentioned, and retained all the property received from him.

The bill charges, that the complainants are equitably entitled to a division of the property received from Pearsoll, as they are willing to consent to ratify the contract of Pope, and to contribute to what has been expended by him. It also charges that this property, as well as that of the hotel, cannot be fairly and equitably divided among the several owners, and therefore the complainants pray that the same may be sold, and the proceeds distributed between the different owners, according to the respective interest of each. There is also a prayer that the rights of the complainants may be established to the property received from Pearsoll, and the extent of that interest, and that an account may be taken between the parties, with respect to the matter of rent, as well that due to the complainants for the hotel, as the property received from Pearsoll.

Pope answered the bill, appending thereto a demurrer for

Harkins, et al. v. Pope, et al.

the following causes, to wit: 1. Because the complainants do not, by their bill, show they have any right or title to a discovery and account. 2. Because they do not show they have a title to the hotel or any portion of it, which entitles them to account, &c. for the rents, or to a partition. 3. Because it is shown by the bill, the complainants did not assent to the defendant's transactions with Pearsoll, but disputed the same by claiming a present interest in the hotel lot, and asking a decree for its partition. 4. Because the complainants do not offer to contribute to the payment of what the defendant necessarily expended in the Pearsoll transaction. 5. Because of a misjoinder of parties complainant—no interest being shown by the bill, to be vested in the administrator of Suffrance. 6. Because there is no equity in the bill.

The defendent, Pope, also pleaded, that the administrator of Suffrance was improperly joined as a party, inasmuch as Suffrance died on the .... day of September, 1840, and his administrator did not qualify until the 17th of October of that year. That by the agreement to lease the one third of Harkins, Brahan and Suffrance, the rent for the year 1840, was not due until the 1st January 1841. By reason whereof no part of the rent for the year 1840, did, or could accrue to the said administrator.

The chancellor overruled the second, third, and fourth grounds of demurrer, but sustained the first and fifth, as well as the plea. He gave no judgment on the sixth ground of demurrer, as that was not argued. He also considered it too late to amend after depositions taken, and therefore refused the complainant leave to amend, by striking out the name of the administrator, and dismissed the bill, without prejudice.

This decree is now assigned as error.

S. PARSONS, for the plaintiffs in error made the following points:

1. The administrator of Suffrance was a proper party. The statutes authorize him to rent the real estate, and under certain circumstances to sell it. [Clay's Dig. 199, § 36; 229, §§ 44-5-6; Philips v. Gray, 1 Ala. 226.] Being entitled to

the rents, he is a proper party to a bill for their recovery. [Allnet on Partition, 92.]

2. The heirs are properly joined with him, as they have the ultimate interest. [Brinkerhoff v. Brown, 6 Johns. C. R. 139; Fellows v. Fellows, 4 Cowen. 682.] All persons legally or equitably interested, are proper parties, as the court will not act by halves, but adjust the matters fully between all concerned. [Story's Eq. Pl. §§ 72-3-4-5, 137-8; 2 Paige, 278; Knight v. Knight, 3 P. Wms. 331; Hitchcock v. U. S. Bank, 7 Ala. Rep. 442.]

3. If however, the administrator is improperly joined the court should have permitted the bill to be amended. [1 Stew. 566; S. C. 8 Porter, 273; Alwyn v. Pray, 2 Y. & J. 518; Mosley v. Hawke, Ib. 520; 15 Law Jour. 87; Story's Pl. 417, n. 2; Ib. 679, § 885.] Amendment of parties may be made at any time. [Sto. Eq. P. § 887; Cooper's Eq. 333; Milford, 325; 2 P. Wms. 300.]

4. The admission of title, by leasing the one third, rendered it unnecessary to state the title of the complainants. [Philips v. Robinson, 1 Hayw. 154; S. C. 5 Ib. 101; Rogers v. Walker, 4 Ib. 205; 5 Yerg. 217; Wilson v. Smith, Ib. 379; 2 Ib. 249; Warren v. Pope, 4 Verm. 290; Smith's Prac. 293 to 300; 3 Ark. 370; Clay's Dig. 351, § 27; 1 Sim. 500; 1 M. & C. 433.]

5. The holding over is a continuation of the tenancy, unless formally discontinued. [Wilson v. Smith, 5 Yerg. 379; Adams on Eq. 107; Doe v. Stinnet, 2 Esp. 717; 4 John 150; Doe v. Bell, 5 Term, 471; 6 Am. Com. L. 386.]

6. The complainants are entitled to share in all of Pope's gains. [Oliver v. Pratt, 3 Howard, 333.]

7. The court can collect from the entire bill, that Suffrance died some time after the acquisition of title, in 1839, and the commencement of 1841, as the bill avers, the complainants then assented to continuing the tenancy. Besides this, the bill alleges in general terms, that Simpson is the administrator; as such, he succeeds to all the promises made to the intestate. This is sufficiently specific until the account is taken.

L. P. WALKER, contra, insisted—

1. The bill is demurrable, because it discloses no interest whatever in the administrator of Suffrance. [Story's Eq. P. 203; 9 Porter, 697; 2 Ala. Rep. 406; Edwards on Parties, 229, § 15; 3 Paige 336.] The averment that the rent *accrued* in the intestate's lifetime, is necessary to give an interest to the administrator; that which accrued afterwards goes to the heir. [1 P. Wms. 178; 2 Black. 43, note 29; 3 Kent, 463; Toller on Ex. 176 to 178; 1 Saund. 287, n. 17.] The statutes referred to on the other side, do not change this rule—they merely create a power to rent, but it is not pretended such power was exercised here.

2. Another objection to the bill is, that the *character* of the title by which the complainants hold, is not set out. In bills for partition, the complainant generally must set out not only his own title, but also that of the defendants. [Sto. Eq. Pl. §§ 258, 242, 255; 1 Madd. Ch. 244. Jeremy Eq. 505; Eq. Drafts, 298, and notes.] The title shown in the bill, is only the execution of a power, but not the grounds on which that execution is made. The deed conveying the power is the title, and not the one executing it. [4 Kent, 437; Theob. on P. S. 249; 1 Pick. 317; Story on Agency. 69.]

3. The place where Suffrance died should also be stated, that it might appear that letters of administration were properly granted. [Story Eq. Pl. 216; Mitford, 155.]

4. The bill presents inconsistent claims, when the attempt is made to divide what Pope received, and also to divide what Pope leased. [2 Story Eq. 507; 1 John. Ch. 566; 20 John. 441.]

5. After depositions taken it is too late to amend. [5 Ala. 550; 3 Ib. 170.]

GOLDTHWAITE, J.—1. In the mode this case is put before the court, it seems somewhat complicated, and our first object will be to ascertain precisely the purpose to be reached by the bill. It appears, as between the parties themselves, the title of the defendant, Pepe, to two thirds, and that of Harkins, Brahan and Suffrance to one third of the hotel, was admitted, and the former leased from the latter, during the

lifetime of Suffrance, their portion, at a specific rent, for the year 1840, and held possession after the expiration of that year, without any new agreement for rent, until the building was destroyed, towards the close of the year 1841. A portion of the rent for the first year, and the whole of that for the second being unpaid, the first question which arises is, whether the defendant, Pope, is liable to pay rent for the second year, according to the agreement for the first? And the second is, whether the portion coming to Suffrance goes to his administrators or to his heirs?

The common law idea, that rent is only due when there is a demise, has long since been changed, both in England and this country by statutes authorizing recoveries for use and occupation. Our statute uses the terms reasonable satisfaction, (Dig. 505, § 1,) but is presumed to be not materially different from other States. In New York, the decisions are uniform, that where there is a lease for a certain annual rent, and the tenant holds over without any new agreement as to the rent, the law implies that he holds from year to year, at the original rent. [Abut v. Abut, 15 John. 505; Everteen v. Sawyer, 2 Wend. 507.] It is not essential to declare in this cause, whether the agreement to pay the same amount of rent will be presumed, but the cases cited are conclusive, that under such circumstances, a continuance of the tenancy, and the obligation to pay rent may be inferred.

2. In regard to the second question, it is urged, our statute which authorizes administrators and executors to rent, at public outcry, the real estate of any decedent, until the final settlement of the estate, (Dig. 199, § 36,) is merely the creation of a power, and does not change the course of descent. The object of this statute seems to be to give the administrator the power to rent the real estate of which the decedent died possessed, and in our judgment it would be a most unreasonable construction to confine the recovery of rent by an administrator, to those cases only in which he exercises the power. It cannot be supposed the legislature intended, as between a former tenant and the administrator, that the latter should either have no power to evict or recover rent. [In Philips v. Gray, 1 Ala. Rep. 226, although we held this act

Harkins, et al. v. Pope, et al.

had no retrospective operation, we considered it as giving the right to the administrator to maintain an action to regain or recover the possession of his intestate, as without this possession there could be no renting.   As between the administrator and the heir, it may be possible the latter is not responsible for rents received, or damages, until the power is exercised, on the principle, that in law he is the owner, and may lawfully expend the usufruct, until advised of the necessity to apply it otherwise, but none of these reasons have application to tenants holding over.   So too it can scarcely be questioned, if the decedent, during his lifetime had leased the estate for a term of years, not expired at his death, the administrator, after notice, would be entitled to the rents in preference to the heir.   It is impossible to suppose the absurdity, that the heir should have the rents, when the reversion in the land might, under other statutes, be sold by the administrator.   We will not, however, undertake to determine in advance the many questions which must arise under this statute.   It is sufficient to say, in this particular case, that as the landlord himself, if living, might have a recovery for use and occupation, this right passes to, and may be enforced by his administrator.   Whether the tenant might not be excused, by paying the rent, after it accrued, to the heir, in the absence of notice from the executor is a matter which we notice now, only to show it is not determined.

What we have said, disposes of so much of the bill as concerns the rents, and shows, that in this connection the administrator is a proper party, whether the rents accrued before or after the death of the intestate.

3.  The remaining portion of the bill, is that which relates to the division or sale of the hotel lot, and the property acquired by Pope from Pearsoll, in payment of the agreement for the lease to be given to him for five years.   Considered as a bill for partition merely, a court of chancery has no power to decree a sale of all the interests, because the property is not susceptible of division ; [Delony v. Walker, 9 Porter, 97 ;] but we think it clear, the complainants have the right, as between themselves and Pope, to have a division of the hotel lot, and to be placed in possession of the parts respectively owned by those in severalty.   In this part of the bill,

it is evident the administrator has the right to join, under the principles already ascertained, inasmuch as when the estate is severed he may rent it under the statute. The heirs and widow seem to be proper parties, as they have the ultimate right. It is unnecessary to determine this however, as none of the objections taken in the court below, or those adjudged, raise the point for consideration here. And the same cause prevents us from now pronouncing on the rights of the parties complainant to a division of the property received from Pearsoll.

4. In relation to the supposed defect of the bill, in not setting out the title of the complainants, we think that is sufficiently stated, under the circumstances of the case. Under the deed exhibited, as executed by Posey, it is clear they claim a fee simple, and the act of Pope in becoming a tenant under the grantees in this deed, relieves them, or those having their title, from stating any other.

On the whole, we are satisfied the grounds stated in the demurrer, are none of them sustainable, and therefore, without inquiring whether there are not defects in the bill, our judgment is, that the decree be reversed, and the cause remanded.