ULRICI, ADM'R OF DELASSUS, & McCARTY vs. PAPIN, ET AL.

1. After leave to answer in chancery is asked and given, it is improper to demur alone. The defendant, if he wish to demur, must plead or answer to some material fact. It is, however, in the discretion of the court to let the demurrer stand.

2. It is no ground for demurrer to a bill by which land may be affected, that a greater part of

the land lies in a county other than that in which the suit is brought. This defence must be made by a plea to the jurisdiction.

3. Although land may be affected by the decree, yet, if the primary objects of the bill do not relate to land, it need not be brought in the county where the land lies.

4. The administrator and vendee of the real estate of the deceased may properly join in a bill for an account, and conveyance of lands held in trust for the deceased.

5. A demurrer that is too general, must be overruled.

6. In a bill for an account and for a conveyance of the balance of lands held in trust to satisfy a debt, after payment of the debt, it is not necessary to tender the money, nor to offer to redeem.

7. The objection to a bill for an account and conveyance of land held in trust, that there are purchasers without notice who should be made parties, cannot be made by demurrer, but must be raised by plea in abatement, or insisted on in the answer.

## APPEAL from St. Louis Circuit Court.

A. Hamilton, *for Appellant.*

Gamble & Bates, *for Appellees, insist:*

1. The bill shows conclusively that the land, by far the greater part of it, if not the whole, does not lie in St. Louis county; and so the suit could not be brought there, by the positive provision of the statute. R. C. of 1835, p. 506, sec. 2; and the Rev. Code of 1845, is word for word the same.

2. This is plainly multifarious. Whatever lands C. D. Delassus had, descended, immediately upon his death, to his heirs, subject only to the payment of debts. The administrator had nothing to do with them; even in a contingency of debts exhibited, and an ascertained deficit of personal assets, his agency is through the courts, and as ministerial as the sheriff's in executing a *fi. fa.*

And McCarty claims by derivative title subject to be disputed, and has made the heir (Auguste Delassus) a party defendant, in order that he may dispute it.

So it appears that two separate matters of litigation, in which different persons must be the parties, are put in the same bill.

To show that this is multifarious, there is no occasion to search for legal proof. A very recent case decided by this Court, with authorities ready collated to my hand, is all that need be cited.— 9 Mo. R., 293, Jones vs. Paul, et al.

3. The pretended deed from Auguste Delassus to McCarty, is made part and parcel of the bill. It is all the title he sets forth. As an instrument conveying title, it is obviously defective. To say nothing of its want of due authentication, (being apparently made in Louisiana) and its lack of registry in the counties where the lands are alleged to lie, it is, except as to the two tracts described, and perhaps even as to them, void for uncertainty. See Newman vs. Lawless, Mo. R., and Ashley vs. Evans, 7 Mo. R.

There is no justice. nor propriety in involving Leduc's representatives in a litigation between McCarty and A. Delassus, about the validity or the extent and operation of that deed. His title at law, as against A. Delassus, being defective, he is not entitled to a discovery or other aid in equity. Story's Eq. Pl., p. 426, sec. 558; Mitford's Ch. Pl., p. 155.

4. The making of Theodore D. Papin a defendant individually, is objectionable on the same grounds of multifariousness as are stated under the second point. In addition to the authorities there cited, see Edwards on Parties, 10 to 15.

5. A defendant is not bound to discover any thing that may subject him to a penalty or forfeiture. Here, not only would a penalty be incurred, but the bill expressly invokes the penal sanctions of the statute. See Story's Eq. Pl., p. 423, sec. 553; Mitford's Pl., p. 194.

6. "He who asks equity must do equity." The Court should not entertain a bill where it is plain that the complainants seek to gain whatever they can, without exposing themselves to the coercive decree of the Court.

7. Same, in principle, precisely, as the last.

8. All the above points are in substance embraced in this. In addition, it appears in the bill that Leduc devised the lands to Hypolite Papin, and that H. Papin is dead, and that the lands are descended from or have been devised by him to his numerous children, some of whom are married, and some are infants, and in condition not to be affected by the claims of the complainant of a latent equity arising out of constructive mortgage, or pretended fraud and imposition, of which they had no notice.

SCOTT, J., *delivered the opinion of the Court.*

This is a suit begun by a bill in chancery. The bill in substance states, that C. D. Delassus died at New Orleans, about the 1st of May, 1843, intestate, leaving an only son, *Auguste Delassus*, his heir at law. That administration on the estate of said Delassus has been committed to the said Ulrici, one of the complainants, in the State of Missouri. That since the decease of said Delassus, his said son has conveyed, by deed of the 7th September, 1843, to the said Lewis B. McCarty, all his lands, of whatever description and wherever situated, for the sum of $40,000.— That Charles Delassus, prior to and on the 15th July, 1817, was seized of a great many lands in the then Territory of Missouri, by virtue of grants, concessions, or orders of survey, before that time made by the Spanish Government, and at that period unconfirmed. That said Charles Delassus, at the time, and for several years previous to the cession of Louisiana, on the thirtieth April, 1803, was Lieut. Governor and Commandant of the province of Upper Louisiana. That prior to his appointment in Upper Louisiana, he was Commandant of the post of New Madrid; that while in command of that post, he took into his service M. P. Leduc, late of the county of St. Louis. That said Leduc was employed as a scrivener, and in other matters in which said Delassus needed aid. That Leduc acquired the confidence of Delassus and was employed by him in matters of private business, and as his private secretary as Commandant and Governor. That Leduc continued with Delassus until the 10th of March, 1804, when he delivered up the government to Amos Stoddard, the representative of the United States. That shortly thereafter, the said Delassus removed to New Orleans,

where he remained until 1815 or '16, when he returned to Missouri, and settled near St. Louis on a small farm. That during the absence of Delassus, Leduc, who did not accompany him, had the management of all his concerns in Upper Louisiana, and continued his superintendence after his return. That from time to time, he loaned small sums of money to Delassus at a high rate of interest, until at length he obtained from him a promisory note, of the date of the 15th July, 1817, for $2472 55, payable six months after date. That Delassus continued to borrow small sums, and obtained about $2400 on notes negotiated by Leduc. That by excessive usury, and compound interest, on the 5th July, 1822, as appears by an account made out at that time, these notes amounted to the sum of $9822, of which the sum of $3621 was usury. That said account was not, until fourteen years after, submitted to Delassus, when an agreement was made that it should bear a special rate of interest. That Leduc, on the 28th August, 1822, for the nominal consideration of $1250, obtained from Delassus four valuable slaves, being all the slaves possessed by him. That shortly after his return to Missouri, Delassus mortgaged the small farm on which he resided to B. Duchouquette for the sum of $2800, to be paid on or before the 20th December, 1823. That in 1825, he returned to New Orleans, in a state of utter destitution, and afterwards the mortgage was foreclosed, and Theodore Papin became the purchaser, by which Delassus was deprived of the only piece of confirmed land he held in this State; all the rest of his lands being unconfirmed. That for a nominal consideration, the said Leduc obtained from Delassus several tracts of land, the claim to which was afterwards confirmed, amounting to upwards of 70,000 arpents, and also the half of an unconfirmed claim purchased by Delassus from P. Chouteau, which half contained about 268,494 arpents. That Leduc was the attorney in fact and the confidential agent of Delassus, when all of said conveyances were made, and in that capacity, in the fall of 1836, received from P. Chouteau, on account of Delassus, the sum of $18,666. That in the month of December, 1836, Delassus visited St. Louis for the first time since his removal in 1825, among other purposes, for that of obtaining a settlement with Leduc. That shortly after the arrival of Delassus, Leduc presented to him an account, in which he claimed a balance of $23,133 23; that to said account was appended an article or instrument, in the hand writing of Leduc, which is as follows:

"For security of payment of which sum, (said balance of $23,133 23) the undersigned have agreed, and do agree, as follows, to-wit: That Marie Philip Leduc having in his hands the transfer of the bond of James

Mackay for a part of the tract of land of thirty thousand arpents granted to said Mackay the 13th October, 1799, also a deed of sale for the remainder of a tract of land of seven thousand and fifty-six arpents, granted to Deluzieres, in the county of St. Francois, of which a part belongs to William Alexander; the deed of sale of said land so made to Leduc is recorded in the county of St. Francois, the 6th December, 1835; also, 6056 arpents, part of a square league granted to Louis Curtois, jr., and sold by said Curtois to said Leduc, by deed recorded in the office of the recorder of the county of St. Louis, book F, p. 5; also, 20,000 arpents on the Salt river in the county of Pike, making part of a tract of land of 30,000 arpents granted to M. Delassus the 10th February, 1798; the deed of sale from M. Delassus to Leduc is recorded in the said county of Pike, book F, p. 268, for the 30,000 arpents, of which ten thousand arpents belong to said Leduc, and the other twenty thousand arpents are only in his hands as security, as above it is mentioned: also, 268,494 arpents, or thereabouts, part of a grant made to James Clamorgan, on the Mississippi below New Madrid, by grant of the 9th August, 1796, which land Mr. Strother is authorized to sell at twelve and a half cents per arpent, and on which lands Messrs. Lawless and Strother have interest by contract, it is well understood that on the proceeds of said sales, after having satisfied the contract of Messrs. Lawless and Strother, the said Leduc shall retain the said sum of twenty three thousand one hundred and thirty-three dollars and twenty-three cents, with interest at the rate of ten per cent. per annum from this date, and shall account for the surplus to the said M. Delassus, or to his representatives. Thus it has been done, stipulated, and agreed, in duplicates; in faith of which, we have signed and sealed, at St. Louis, Missouri, the fifteenth of December, one thousand eight hundred and thirty-six."

This instrument bore date subsequent to the conveyances from Delassus to Leduc, above mentioned, and included the same land. That many of the items of said account are for usurious interest and are fraudulent. That the lands conveyed to Leduc were held in trust by him. That he had no beneficial interest in them. That Leduc, in declaring that the land which had been absolutely conveyed to him should stand as a security for the debt of $23,133 23, evaded the trust vested in him by the absolute conveyances, and unequitably converted them into instruments exclusively for his benefit. That Leduc sold his interest in the large Clamorgan claim, purchased by Delassus from P. Chouteau, for $26,849 50. That by his deed conveying the same, no reference is made to Delassus. That Leduc, on account of said transfer, received $16,704,

and that the balance of said purchase money remains unpaid. That payment was in part made of bonds of the American Life and Trust Company, which might have been sold at a small discount, but through the neglect of Leduc, they have become utterly worthless. That Leduc, acting on his own responsibility, and not consulting Delassus, should be accountable for this loss.

The bill then states the death of Leduc, and makes his representatives parties, and avers that the representatives of Leduc's estate have presented to the said complainant, Ulrici, administrator of the estate of Delassus, an account, in which the said estate is charged with $47,568 32, and credited by the sum of $11,229 51. This account is the same above mentioned, augmented by the charging of usurious interest.

The bill prays for a discovery of the usurious transactions; that the deeds taken by Leduc may enure as trust deeds and transfers to the use and benefit of Delassus, and that an account may be taken between the estates of Delassus and Leduc; that all usurious charges be disallowed; that the forfeiture for exacting usurious interest be imposed; that the agreement appended to the account rendered in 1836, be declared fraudulent; and for general relief.

After twice obtaining leave to answer, the respondents filed a demurrer, which the court refused to strike out, as being filed out of time, but sustained the same and dismissed the complainant's bill.

The following are the alleged causes of demurrer, viz:

1. This is a suit in equity concerning real estate, and whereby the same real estate may be affected, and is not brought in the county in which such real estate, or the greater part thereof, is situate.

2. The bill joins, as complaining parties, the personal representative of Charles D. Delassus, and Louis B. McCarty, claiming for himself by separate, adverse and inconsistent right.

3. The title set up in the bill by said McCarty, is on the face of the bill defective and illegal.

4. The bill makes Theodore D. Papin, in his individual capacity, a defendant in respect of property and transactions separate and distinct and entirely disconnected from the subject matter of the bill.

5. The bill seeks a discovery of transactions alleged to be fraudulent and usurious, which, if confessed, would subject the party to legal penalties and forfeitures.

6. The bill seeks a decree in favor of the complainants for all the lands and real estate therein mentioned, discharged of the title and claim of M. P. Leduc, and those now representing his interest, but does not of-

fer to reclaim said lands in case they should be found chargeable with debts from Delassus to Leduc.

7. The bill prays that an account be taken, and that a balance, to be found *against the defendants*, be decreed in favor of the complainants; but does not offer to do equity by paying the balance which upon such account may be found *against the complainants*.

8. The bill of complainant does not set forth any case of equity entitling the party to relief, in the manner and form therein stated.

There is no doubt that, by the regular practice of courts of chancery, after leave for time to answer has been asked for and obtained, that it is irregular to demur alone. Whenever a defendant has obtained an order for time, and is advised afterwards to demur, he must also plead to or answer to some material part of the bill. But if a demurrer is filed, as it is in the discretion of the court to permit it to stand, there can be no propriety in reversing the decree for that cause. Story's Eq. Pl., sec. 461–2–3.

As to the first cause of demurrer, it may be remarked, that it does not appear clearly where the greater part of the lands lie. This objection, if tenable, should have been raised by a plea to the jurisdiction. It is not very clear that this is a suit respecting lands within the meaning of the statute. It is true, that lands may be affected by it, and so they may in every case, for lands may be sold to satisfy the decree. The bill states, that a large account, containing usurious, fraudulent and extortionate charges, has been presented by the administrator of Leduc against the estate of Delassus, and prays that the account may be adjusted on principles of equity, and that lands held in trust may be so declared and applied in satisfaction of any balance found due. So the primary object of the bill would seem to be the adjustment of an account.

The second cause of demurrer is, that the bill joins as complaining parties the personal representative of C. D. Delassus and L. B. McCarty, claiming for himself by a separate, adverse and inconsistent right. It is clear that McCarty has an interest in this suit, so that his rights may be affected by a decree. As all the lands have been conveyed, and as there may result a trust to the legal representative of Delassus, there is a propriety in making McCarty a party, that the legal estate that may remain after the satisfaction of the debt may be vested in him. In Haskins vs. Pope, 10 Ala., 493, it was held that an administrator may join *with* the heir in a bill for partition. The administration law of that State, with regard to the power of administrators over real estate, is similar to our own.

The third cause of demurrer is, that the title of the complainant, Mc-Carty, set forth in the bill is defective. The title is either in McCarty or Auguste Delassus, and as both of them are parties to the bill, there can be no force in this objection. That Auguste Delassus is a party defendant, could only be objected to by himself. Story's Eq. Pl., 544 sec. This demurrer is not filed by him. The objection that the title of Mc-Carty is doubtful, is a reason why A. Delassus should have been made a party to the bill. Story's Eq. Pl., sec. 153.

The fourth cause is, that Theodore Papin, in his individual capacity, is made a party, and therefore the bill is multifarious. The facts stated in connexion with Papin in his own right, are merely set forth to show the want and destitution to which Delassus was reduced. No relief is prayed as growing out of those facts. This objection, then, has no foundation in fact.

The fifth cause of demurrer is, that the bill seeks a discovery of transactions alleged to be fraudulent and usurious, which, if confessed, would subject the party to legal penalties and forfeitures. The rule in equity is, that if a demurrer is too general, that is, when it is good to a part only, if it is made to extend to all the parts of a bill, it must be overruled altogether. Story, sec. 443. Admitting this objection was tenable, the demurrer cannot stand; the party should have demurred only to that part of the bill seeking a discovery of matters which would subject the respondent to penalties and forfeitures. The old law on the subject of usury provided, that if it was found by a trial at law that a party had exacted usurious interest, as much of the principal should be forfeited as equalled the usurious interest. The party insisting on usury as a defence, only obtained this when his defence was established at law. But if he went into equity for relief, the rule applied that, he who wants equity must do equity. It was equity that he should pay the sum actually borrowed or due, with legal interest, and on these terms only was he assisted in equity. We must not confound our usury laws with those of England. In England, the taking of usurious interest was a highly penal offence, and subjected the party to a criminal prosecution; so is the law in some of the States, but not so in this State.

The sixth cause of demurrer is, that the bill does not offer to redeem the land, in the event that a balance on the adjustment of the accounts should be found due Leduc. If Leduc held the lands in trust or as a mortgage to satisfy his debt, it is clear he cannot be declared a trustee but of so much of the land as will remain after his debt has been satisfied. Under the present practice, which does not require a strict re-

demption, but a sale of the mortgaged premises, there can be no necessity for a tender of the mortgage money, or an offer to redeem. Indeed, under the practice, when there is a strict redemption, without any sale of the mortgaged premises, it is usual to extend from time to time the period within which a party applying for redemption may, bring in the mortgage debt before his bill will be dismissed, by which his equity of redemption is barred. As the frame and structure of this bill clearly shows that the complainants neither wish nor desire the land, but after payment of all that is due Leduc's estate, we do not see the force of this objection.

As the eighth cause of demurrer is said to include all the others, it has already been considered. Surely, it can be no objection to the bill that it may affect those who claimed by devise or descent from Leduc. That there are purchasers of the lands without notice, no where appears on the bill, and if it did, it would not be a cause of demurrer. The party relying on this defence must set it up in a plea, or insist on it in his answer.

Judge NAPTON concurring, the decree will be reversed and the cause remanded.