J. FRANK LEE, Respondent, v. H. S. HARMON et al., Appellants.

St. Louis Court of Appeals, April 10, 1900.

Fraud: EQUITY: PRACTICE, TRIAL. A party should not be permitted to make a court the instrument of his injustice, and when it is made to appear by clear and convincing evidence that he has done so, a court of equity will not hesitate to set aside the judgment.

Appeal from the Jefferson Circuit Court.—*Hon. F. R. Dearing,* Judge.

AFFIRMED.

*Kleinschmidt & Reppy* and *Frank A. C. MacManus* for appellant.

(1) The court erred in overruling the objection made by defendants to the introduction of any evidence under the bill. Andrews v. Lynch, 27 Mo. 167; Hatten v. Randall, 48 Mo. App. 203. (2) The failure to state the items or to give the particulars concerning the unsettled accounts, would make a petition at law demurrable. In a bill in equity a perfect and complete defense must be stated. (3) The bill was fatally defective in not reciting the judgment. An essential averment to do or not to do some specific act was necessary to the completeness of the bill in its charges of fraud. The bill absolutely failed to allege that defendant

Harmon promised or agreed to dismiss the suit against Lee, or that he relied upon any promise. It also failed to recite the fact that Harmon promised he would not take judgment for the balance due on the note. (4) Lee's bill says: "And made no defense therein, supposing that the suit would be dismissed by said Harmon," and in his evidence he says: "He thought it had been dismissed." How the thoughts of Lee can be made factors or elements of a fraud with which Harmon is charged, is beyond comprehension. Harmon can not certainly be held responsible for the vagaries of or the wisdom of another's power in the thinking line. (5) It was the plain duty of Lee to see that the cause was dismissed or else defend the same. There was no legal or moral duty upon Harmon to dismiss the cause unless he promised or agreed to do so. If Harmon made no promise what can the "fraud" be based upon? (6) A court of equity can grant only such relief as the case stated will justify, and will not ordinarily be so indulgent as to permit a bill framed for one purpose to answer another. McCroy v. Lowry, 25 Mo. 258; Norman v. Barns, 67 Ala. 248; Coon v. Seymour, 71 Wis. 340; Smith v. Taylor, 78 Mo. 630.

*J. F. Green* for respondent.

It is well settled that a judgment fraudulently obtained will be set aside in equity. The petition in this case states a good cause of action for equitable relief, and the judgment of the circuit court was fully warranted by the evidence. Voelcoer v. Sanderson, 51 Mo. App. 328; Bresnahan v. Price, 57 Mo. 422; Dinkle v. Pollak, 49 Mo. App. 479; Murphy v. DeFrance, 101 Mo. 151.

BLAND, P. J.—At the January, 1893, term of the Jefferson Circuit Court, Harry S. Harmon recovered of J. Frank Lee a judgment for $240.97 in a suit on a promissory

note made by Lee to Harmon for $304.25, dated March 2, 1883. An execution was issued on this judgment in April, 1899, and directed and delivered to William H. Warren, sheriff of Jasper county, Missouri. Lee filed in the Jefferson Circuit Court his bill in equity, alleging that the judgment was procured by fraud, and prayed for an injunction restraining the sheriff of Jasper county from enforcing the execution, and that the judgment be set aside and cancelled. The cause was heard by the circuit court of Jefferson county and the relief prayed for by Lee was granted. Harmon appealed.

The material averments of the petition are (in substance), that Lee had an open and unsettled account against Harmon for $400; that about October 12, 1893, Harmon began his suit in the Jefferson Circuit Court against Lee on the $304 note by attachment; that armed with a writ of attachment issued in the cause the sheriff of Jefferson county and Harmon proceeded to the premises of Lee to levy the attachment and serve the summons; that on arriving at Lee's house Harmon and Lee got together and fully settled and compromised all matters of dispute between them, including the note sued on; that in said settlement it was agreed that Lee owed Harmon $300, and that Harmon agreed then and there to accept in settlement of said sum a piece of real estate owned by Lee situated in Jefferson county, and that Lee then and there made and executed to Harmon a deed to said piece of land, which was then and there delivered and accepted by Harmon in full payment and settlement of said balance, and that Harmon then and there agreed to dismiss his said suit and pay all the costs thereof; that relying on said agreement, and settlement Lee did not appear to said suit; that Harmon in the absence of Lee, without his knowledge or consent and in fraud of said agreement and settlement, instead of dismissing said suit, took judg-

ment thereon and thereafter concealed said fact from Lee until the execution was issued in April, 1899.

That answer admitted that Harmon took the deed to the real estate, but denied that it was in settlement of the note, denied that any settlement was made, denied that he in 1893, or at any other time owed Lee $400, or any other sum on account, and averred that he accepted the deed to the real estate because the land was all the property that Lee owned at the time on which his attachment could have been levied, and that Lee conveyed the land to him to prevent the levy of the attachment on personal property which Lee was then about to sell at a public sale, which personal property, however, Lee claimed belonged to one Mead, his father-in-law. The evidence of Lee is positive and direct that the settlement was made and that the conveyance was executed as a finality and in full settlement of all accounts and matters in dispute between him and Harmon, including the $304 note, and that Harmon agreed to dismiss his suit and pay the costs; that in a day or two after the settlement was made he removed from Jefferson county and had not resided there since; that he never learned that the judgment was rendered until he was served with the execution by the sheriff in Jasper county, where he resides. As to the settlement, Lee is corroborated by Maupin, the sheriff, who had the attachment writ for service. He says there was a settlement made; that the attachment was not served by direction of Harmon, and that Harmon on the same day paid him all of his fees and three per cent commission on the $300 (consideration for the land deeded to Harmon by Lee). Harmon as a witness denied that he owed Lee anything on any account, denied that any settlement was made between them, and says that Lee offered to convey the land to him for $300, to be applied as a credit on the note, if Harmon would not have the attachment served and let him proceed

with his public sale of personal property; that he accepted the proposition and instructed the sheriff to serve Lee with summons, but not to serve the attachment; that Lee had promised to pay the debt since the judgment was rendered and before the execution was issued. As to the controlling facts in issue Harmon is not corroborated by any witness. It further appears from Lee's testimony that at the date of the alleged settlement he had about $1,400 deposited in a bank in Jefferson county to his credit; that he has resided in this state ever since the judgment was rendered, and at all times had ample personal property out of which the judgment could have been collected; that he is a brother-in-law of Harmon's, but not on good terms with him. Harmon's testimony tends to show that Lee's property was so mixed with partnership property and with his wife's property, that it could not be reached by execution, but it is quite evident that he made no inquiry as to Lee's financial condition, nor any effort to collect his judgment, until the execution, which was enjoined, was issued. A consideration of all the testimony is convincing that Harmon took the advantage of Lee to obtain his judgment, and the proof is cogent that he accepted the deed to the land in settlement of all matters of dispute between himself and Lee, and agreed to dismiss his suit. If this be so, then Lee was guilty of no laches by not appearing and defending the suit. He had a right to rely on Harmon to carry out his contract and dismiss the suit. Instead of doing this Harmon disregarded his agreement and took the judgment instead of dismissing his suit. This was a gross injustice and palpable fraud. A party should not be permitted to make a circuit court the instrument of his injustice, and where it is made to appear by clear and convincing evidence that he has done so, a court of equity will not hesitate to set aside the judgment. Bresnahan v.

Price, 57 Mo. 422. The evidence authorized the finding and judgment of the circuit court, and finding no prejudicial error in the admission or rejection of testimony, and the petition being sufficient to support the judgment, with the concurrence of the other judges the judgment is affirmed. Judge *Bond* concurs; Judge *Biggs* absent.