SOPHIA MARLEY, Appellant, v. NORMAN'S LAND & MANUFACTURING COMPANY, No. 21,514.
SOPHIA MARLEY v. NORMAN'S LAND & MANUFACTURING COMPANY, Appellant—No. 21,513.

Division One, July 11, 1921.

1. **JUDGMENT:** Procured by Fraud: Knowledge of Suit Pending. A plaintiff should be held responsible for any fraud in law, fraud in fact, deception or mishap, which was occasioned by his acts or the acts of his counsel. Where a plaintiff employed one attorney to bring suit by personal service against a non-resident and another attorney to bring suit by publication for the same land in the same court at the same term and the order of publication was published in an obscure paper away from the county-seat, and to the first suit the defendant appeared, filed a motion requiring plaintiff to give bond for costs, which being sustained and no

bond being filed, the suit was dismissed, the judgment rendered by default in the second suit, the defendant having no knowledge thereof, should be set aside at the suit of said defendant or his grantee. Although the attorney in the one suit knew nothing about the other suit having been brought, the plaintiff in both must be held responsible for everything either of them knew, for in law he knew whatever they knew, and his act was not only a fraud upon the defendant, and tricked him out of his defense to the second suit, but was a fraud upon the court who rendered the default judgment therein.

2. CONVEYANCE: Patent Clerical Error: Recognition in Suit to Quiet Title: Omission of Word Quarter. The recognition of a patent clerical error or omission in the construction of a deed is not a reformation of it; and where the judgment in a tax suit properly described the land as the southwest quarter and the northeast quarter of Section 36, and the sheriff's deed recites that the judgment described the southwest quarter and the northeast quarter of Section 36, and then says that named persons were the highest bidders for the "southwest quarter and northeast of Section 36" and that said last above described tracts were stricken off and sold to said named persons, it is clear that the omission of the word "quarter" after the word "northeast" was a patent clerical error, and that said deed, when read as a whole, conveyed 320 acres to said purchasers; and their subsequent grantee, in his suit to quiet title, is, without bringing suit in equity to reform the deed, entitled to judgment for the 320 acres, and not simply to 160, as the trial court ruled.

3. TAX SUIT: Trust Estate: Sale of Legal Estate. Where the will, fairly construed, contemplated that the executors should divide the property between the widow and two sons, and that one of the sons should hold his brother's share until he became of age; there is nothing to show when said brother became of age; the will does not show when it was made; the testator died in 1883 and the administration of the estate closed in 1887; in 1891, after the death of the wife, suit for taxes was brought against both brothers, they were personally served, and in their answers asserted they were the owners of the land, and made no claim to a trust estate, it will be *held*, in a suit to quiet title, that the title passed to the purchaser at the sheriff's sale under the tax judgment, and that a subsequent purchaser from said brothers took nothing by his deeds.

4. ———: ———: Estoppel. Defendants in a tax suit, after filing their answer in which they assert they are the owners, will not be heard, on the ground of estoppel, to urge that the judgment in the tax suit was void and did not bind them because the prop-

Marley v. Land & Mfg. Co.

erty was held by one of them as trustee for the other. Inconsistent positions cannot be taken where they work injury, and the purchasers at the tax sale had a right to rely upon defendant's answer filed in the tax suit, in which they alleged they were the owners. And a subsequent purchaser from said defendants stands in no better position than they do.

Appeal from Scott Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED *(with directions).*

*Oliver & Oliver* and *Gallivan & Finch* for plaintiff.

(1) The suit for taxes against August J. Weil and Henry G. Weil and the unknown heirs of Joseph Weil, deceased, was against the proper parties, and, therefore, sale under said judgment conveyed title. Sec. 12945, R. S. 1919; Vance v. Corrigan, 78 Mo. 94; State ex rel. Hunt v. Sack, 79 Mo. 661; Gitchell v. Kreidler, 84 Mo. 472; Keaton v. Jorndt, 220 Mo. 117. (2) The will of Joseph Weil, not having been probated in Stoddard County, did not impart notice until it was recorded there in 1905 Graves v. Ewart, 99 Mo. 17; Rodney v. McLaughlin, 97 Mo. 426; Kieth v. Kieth, 97 Mo. 223; Rodney v. Landau, 104 Mo. 260. (3) The acts and conduct of Norman and his attorneys, as well as the result thereof, was a fraud upon the court and fraud in the concoction of the judgment. Lee v. Herman, 84 Mo. App. 157; Wonderly v. Lafayette County, 150 Mo. 635; Tapana v. Shaffray, 97 Mo. App. 337; Smoot v. Judd, 161 Mo. 673; Bresnehan v. Price, 57 Mo. 422; Howard v. Scott, 225 Mo. 685; Ramsey v. Hicks, 53 Mo. 190; Irvine v. Lehy, 102 Mo. 204. (4) The sheriff's deed under the tax judgment conveyed the three hundred and twenty acres, as the abbreviated description is good and sufficient. Sec. 12968, R. S. 1919; State ex rel. v. Vaile, 122 Mo. 48. (5) August J. Weil and Henry G. Weil, having been personally served in the tax suit, and having filed answer

pleading title in themselves, would be estopped from setting up any different claim of title against the purchaser at the tax sale and the defendant claiming under them by deeds made in 1905 is in no better position. Nave v. Todd, 83 Mo. 601; Koney v. Laird, 153 Mo. 408; 16 Cyc. 799; Austin v. Loring, 63 Mo. 19; Proctor v. Nance, 220 Mo. 104.

*J. L. Fort* and *B. C. Hardesty* for defendant.

(1)  Defendant has the record title independent of the decree of September 22, 1910, which plaintiff seeks to cancel. Donaldson v. Allen, 182 Mo. 626; Hazel v. Hagen, 47 Mo. 277; Ebey v. Adams, 10 L. R. A. 162; 39 Cyc. 99, 102. (2) Defendant also has title under said decree, because no actual fraud exists as a basis for setting aside the same. (a) The evidence, instead of showing actual fraud as a basis for setting aside said decree, shows Norman's good faith throughout. Rodan v. Transit Co., 207 Mo. 408. (b) The very acts Norman is charged with rebut the charge of fraud, for they comport better with the theory of fair dealing than with fraud. Ames v. Gilmore, 59 Mo. 537; Redpath v. Lawrence, 48 Mo. App. 427; Andrews v. Linebaugh, 260 Mo. 623. (3) Defendant has title under said decree, because no constructive fraud exists as a basis for setting aside that decree. (a) Constructive fraud cannot be founded upon acts that are of a perfectly legal character. Hobgood v. Ehlen, 141 N. C. 344; Nations v. Pulse, 175 Mo. 93; Bank of Versailles v. Guthrey, 127 Mo. 193; Barr v. Cubbage, 52 Mo. 404; Steward v. Severance, 43 Mo. 322. (b) Norman was under no legal obligation to give personal notice to Marley. Huiscamp v. Miller, 220 Mo. 135. (c) Norman is chargeable with no act of commission or omission which can be considered the proximate cause of Marley's failure to obtain notice of the publication suit. Snyder v. Free, 114 Mo. 376; R. S. 1909, secs. 2102, 2103; Travelers' Prot.

Assn. v Gilbert, 55 L. R. A. 542, 543; Lieber v. Lieber, 239 Mo. 1; See v. Harmon, 84 Mo. App. 157; Tapana v. Shaffray, 97 Mo. App. 345; Sanderson v. Voelcker, 51 Mo. App. 332; 23 Cyc. 936, note 77. (d) The real proximate cause of the defendant's failure to learn of the pendency of the suit or the rendition of the judgment is the legal negligence with which defendant is chargeable. Richardson v. Howard, 158 Pac. 877; R. S. 1909, sec. 2103; Bunn v. Lindsay, 95 Mo. 260; Burnham v. Clark, 232 Mo. 657. (4) The plaintiff appealed from the court's award of a part of the land to defendant, but that action of the court is correct and should be sustained. DePaige v. Douglas, 234 Mo. 78; Dixon v. Hunter, 204 Mo. 387.

GRAVES, J.—Plaintiff's action is one to set aside a jugdment of the Circuit Court of Stoddard County, Missouri, in so far as such judgment effects James Marley and the land involved in this suit. The judgment sought to be so cancelled was one entered on the 22nd day of September, 1910, in the case of W. W. Norman v. Jefferson J. Green et al. The Norman suit, supra, was an action to quiet title to two thousand acres or more of land, including the three hundred and twenty acres involved in the case now before us. It was against divers parties (including James A. Marley), if living, and against their heirs and devisees, if dead. Marley claimed to own three hundred and twenty acres of land here involved, and was a party to this blanket suit where all claimants were being jointly sued, whether they claimed an interest in the whole amount of land stated in the petition or not. This Norman suit was filed January 25, 1910, and judgment entered on September 22, 1910, as stated above. The judgment was on service by publication. The plaintiff in the present action is the *mesne* grantee of James A. Marley, and the defendant is the immediate grantee of W. W. Norman. The petition is in two counts, and as we gather it the first count is based upon a charge of actual fraud in the pro-

curement of the judgment, whilst the second count might be said to be broad enough to cover constructive fraud, mistake and deception, through which James A. Marley was prevented from defending that action.

In 1905 James A. Marley placed of record in Stoddard County, Missouri, a deed which purported to convey to him the land in suit. In 1906, W. W. Norman brought a suit against Marley to quiet title to this land, in Stoddard County Circuit Court. The suit was by publication. Marley heard of it, and arranged with counsel to defend his title. The case went by change of venue to St. Genevieve County, where it was disposed of in 1909, by plaintiff taking a nonsuit after the trial court had indicated adverse action to him. I. R. Kelso was counsel for Norman in this case, and it is shown that he agreed to reinstitute the suit against Marley within a year. The suit begun in 1906 we shall call Suit No. 1. The one brought January 25, 1910, we shall call Suit No. 2.

With the Suit No. 2 pending, Mr. Kelso, as attorney for W. W. Norman, on February 3, 1910, brought Suit No. 3, and had a summons sent to Marley's home in Illinois, and there served upon him. Suit No. 2 was brought by Judge Green, as attorney for Norman, and at Norman's direction the notice of publication was run in a paper of limited circulation printed and published in a small town some distance from the county seat. Suits No. 3 and No. 2 were returnable to the same term of the Stoddard County Circuit Court. Marley having actual notice of Suit No. 3 came to Missouri and appeared in defense of that suit. Marley filed a motion for a cost bond in said action on September 12, 1910, ten days prior to the decree in Suit No. 2. Said motion for cost bond was continued to March term, 1911, and on the 22nd day of March Norman dismissed the cause.

Both counts of the petition in the instant case contained a prayer not only for the cancellation of the judgment of September 22, 1910, but also for the determining

of title. The court granted plaintiff leave to strike out those portions of the prayers with reference to the adjudgment of title, and granted defendant leave to amend its answer so as to ask for the adjudication of title. Both parties put in their chain of title to the three hundred and twenty acres of land. The trial court found against plaintiff on the first count of the petition, and for her on the second count, and set aside the judgment of September 22, 1910, but on the respective claims of title decreed title in plaintiff for one hundred and sixty acres of the land and for defendant for the other one hundred and sixty acres. From such judgment both sides have appealed. Details of both pleadings and evidence are left to the opinion.

I. If the trial court erred in setting aside the judgment of September 22, 1910, we have the end to plaintiff's case. This judgment is a blot upon her title, so long as it stands. This, because it divested

**Fraudulent Judgment.** James A. Marley of title, and decreed title in W. W. Norman, who conveyed to defendant. The trial court in its decree said:

"On the second count of the petition, as amended, the court finds that by reason of mistake, error and combination of facts and circumstances of the two suits against plaintiff in the Stoddard County Circuit Court, she was misled, deceived and prevented from contesting her title to the lands involved, and that the order, judgment and decree of this court should be that the decree of the Stoddard County Circuit Court bearing date September 22, 1910, decreeing the title in defendant, should be cancelled, annulled and for naught held."

To get at the facts a little more fully it should be said that James A. Marley claimed to have acquired title to these lands October 2, 1905, and his deed was recorded December 26, 1905. He, as well as plaintiff, resided in Illinois. James A. conveyed to W. H. Marley, August 22, 1911, but the deed was not recorded until August 30, 1915.

By the will of W. H. Marley, probated in Edgar County, Illinois, the title passed in December, 1913, to the plaintiff. The will, together with its probate, were later (in 1916) filed for record in Stoddard County. Case No. 1 of the line of cases involved here, was a suit by Norman against James A. Marley, and covered only the land in suit. It was finally dismissed in 1909, under the circumstances indicated in our statement.

The present plaintiff is the mother of James A., as we gather from the record. From 1906 on, these two have paid the taxes on the land. It stands admitted that neither the defendant nor its grantors had paid any taxes thereon for a period of thirty-one years.

Mr. Norman explains the suits Nos. 2 and 3, by saying that he had written Mr. Kelso about re-instituting the suit which was dismissed in 1909, but had received no answer, and that he got Judge Green to bring No. 2, the omnibus suit, in which the name of James A. Marley appeared about the middle of a long list of defendants, and Marley's three-hundred and twenty acres described with several thousand acres of other land scattered over the county. Norman knew, in law, if not in fact, of both these suits being brought, because the law required him to know the acts of his agent and attorney Kelso, who brought Suit No. 3. In law he knew just what Kelso knew, and if he did, he knew that Marley had been sued by personal service, and only on the three-hundred and twenty acres of land owned by him. He knew in fact all that was done in Case No. 2, and the form of that petition. He had the usual knowledge that publications are not often seen by non-residents, and he knew of Marley's non-residence. He further knew that Marley, having been sued by personal service, would not likely suspect another suit by publication against him. The whole transaction, from the beginning to the end, was the handiwork of Norman and his own agents, and Norman should be responsible for any fraud in law, fraud in fact, deception, or mishap, which was occasioned by his acts

or the acts of his counsel. Of course the two lawyers are blameless, because neither knew what the other was doing, but this cannot be said of Norman. His acts put the whole chain of circumstances in motion, and whilst the trial court may have been right in saying that there was no actual fraud, a matter we need not and do not pass upon, yet it was clearly right in holding, in substance, that the things done by Norman and his agents and attorneys worked a fraud upon Marley, through which he (without relief from a court of equity) would lose title to the land, if such he had. The fact that Marley was sued in Case No. 3, and personally served, was well ' calculated to prevent him and his counsel from scrutinizing the county papers for another suit by publication in which his land might be included. Marley not only had counsel looking after his title from 1906 on up to 1911, when Case No. 3 was dismissed, but during these years he took the leading county seat paper, in order to keep advised. Norman is responsible for Suit No. 3, because he had directed his counsel Kelso to reinstate the suit dismissed in 1909, Suit No. 1. If this act tended to abate the vigilance of Marley, and tricked him out of a defense in Suit No. 2, it was not only a fraud upon Marley, but upon the court who rendered a default judgment in Case No. 2. This filing of a case and procuring personal service therein was well calculated to mislead Marley as to there being another action pending, and, as said, this was the act of Norman. What his agent and attorney did, in law and equity, he did, and if the act misled Marley, and tricked him out of a defense in Case No. 2, then such fraud entered into the judgment herein sought to be set aside. [Wonderly v. Lafayette Co., 150 Mo. l. c. 650; Howard v. Scott, 225 Mo. l. c. 714.]

In the latter case, LAMM, J., said:

"But the doctrine has been uniformly laid down broadly as announced in Wabash Railroad Co. v. Mirrielees, supra, and the cases there collated and cited, to the effect that false swearing and false averments in plead-

ings do not give rise to an action in equity to set aside a judgment for fraud. Such, then, may be taken as accepted doctrine. There must be some fraud committed on the court itself in the procurement of the judgment, arising extrinsically or collaterally to the issue tried, *or on the party himself arising in the same way.*

"Nevertheless no court has undertaken to point out and define the particular frauds which will vitiate a judgment any more than it has to define fraud generally, and many cases attest the acute diligence of courts in classifying facts as extrinsic and collateral in order to save the administration of justice from the heavy reproach of enforcing an unconscionable advantage sounding in fraud in procuring a judgment. In Wonderly v. Lafayette County, supra, the scheme denounced there was said to be a 'fraud on the court whose jurisdiction was betrayed *and a fraud on defendant who was tricked out of his defense.'* That case illustrates the honorable sensitiveness of courts to frauds on their jurisdiction, and shows how shadowy, uncertain and somewhat arbitrary is the line between fraud in the procuring of the judgment as distinguished from fraud in the cause of action itself. In other cases judgments have been annulled because of tricks and deceptions whereby the court has been made an 'instrument of injustice.' [Bresnehan v. Price, 57 Mo. 422; Lee v. Harmon, 84 Mo. App. 157; Clyce v. Anderson, 49 Mo. 40; Fitzpatrick v. Stevens, 114 Mo. App. 497.]''

In Suit No. 3 Norman, through his counsel, had the motion for costs continued, and whilst this was pending, through other counsel took his judgment in Case No. 2. It makes no difference that Norman acted through different agents or attorneys. What they did he did, and his knowledge covered the whole chain of circumstances. If these acts of Norman prevented Marley from making a defense in Suit No. 2, it is sufficient in equity to defeat the judgment entered therein. There is no doubt that Norman directed Kelso to reinstitute the suit dismissed

in St. Genevieve County. And as above suggested he must know the acts throughout, although done for him through different agents. The court was right in setting aside the judgment of September 22, 1910, because it stands admitted that the present defendant stands in the shoes of Norman. That is to say Norman was its president and chief stockholder at the date it took the deed, and Norman's knowledge was the corporation's knowledge.

II.   Both parties presented to the court their respective chains of title. The two chains of title run the same up to a time (January 16, 1878) when the title passed to Joseph Weil. At this point the parties **Patent** separate in a way. Joseph Weil lived in St. **Clerical** Louis, for many years. He died in 1883, leav- **Error.** ing a will, which was duly probated. He left a wife and two sons, August J. Weil and Henry G. Weil, called in the will Harry Weil.

In 1891 a suit for taxes was brought by the County Collector of Stoddard County against August J. Weil, Henry G. Weil and the unknown heirs of Max Weil and Joseph Weil. August J. and Henry G. Weil were personally served with summons in this tax suit, and these two parties filed an answer in which they. admitted the title to be in them, and then followed such admission with a general denial. The widow had died prior to 1890, according to the evidence of August J. Weil. The tax judgment went in due course, and the sale was made thereunder. The tax judgment properly describes the three hundred and twenty acres as the S. W. 1/4 and N. E. 1/4 of Sec. 36, Twp. 24, Range 12, E. There were other lands in the judgment, not of consequence here. The tax deed says (1) that the judgment described the S. W. 1/4 and N. E. 1/4 of Sec. 36, Twp. 24, Range 12, with other lands. (2) That O. C. Frisbee and James W. Buchanan were the highest bidders for: "Southwest quarter and northeast of Section Thirty-six (36), the west of section, southeast

quarter and south half of southwest quarter of northeast quarter, all in Section Thirty-two (32) in Township Twenty-four (24), north, of Range Twelve (12), east, for the price and sum of one hundred dollars.'' (3) ''That said last above described tracts were stricken off and sold to O. C. Frisbee and James W. Buchanan;'' and (4) that, ''I, J. N. Patterson, Sheriff as aforesaid, do hereby assign, transfer and convey unto the said O. C. Frisbee and James W. Buchanan, all the above described real estate so stricken off and sold to O. C. Frisbee et al., that I might sell as Sheriff as aforesaid, by virtue of the aforesaid judgment, execution and notice.''

So far as the land involved in this suit is concerned, the description of the land sold to Frisbee and Buchanan would be ''Southwest quarter and northeast of Section Thirty-six (36) in Township Twenty-four (24) north, of Range Twelve (12), east.'' If the word ''quarter'' followed the word ''northeast,'' as it does by figures and letters in the judgment and other parts of the deed, there would be a complete and good description of the three hundred and twenty acres involved here. It was by reason of the absence of the word ''quarter'' as above indicated that the trial court allowed to plaintiff only one hundred and sixty acres of the land, i. e. the southwest quarter of said section. This sheriff's deed must be construed as a whole. It first says that the judgment under which the sale was had properly described the property herein at issue. It then recites that the sheriff did ''expose to sale at public auction, for ready money, the above described real-estate'' which was properly and definitely described theretofore in the deed. Then follows the statement, which we have heretofore quoted. It is clear that the omission of the word ''quarter'' after the word ''northeast'' in the deed is a mere clerical error, and should be so considered in construing its effect, as a conveyance. When read as a whole we think this deed conveyed the whole three hundred and twenty acres to Frisbee and Buchanan, and plaintiff got what title they re-

ceived through it. The recognition of a patent clerical error or omission in the construction of a deed is not a reformation of a sheriff's deed. We have ruled in Division Two that a sheriff's deed cannot be reformed in an action to quiet title. [Brannock v. McHenry, 252 Mo. 1. c. 10.] It is further stated in that case that the facts might be made to appear to the end that the court might stay the proceeding until a corrected deed was procured. Plaintiff asked for such stay in this case, but the request was refused. We would reverse and remand the case for this failure, if we thought a new deed was required.. We think, as above indicated, that in construing this sheriff's deed we can consider the very patent omission of the word "quarter" as suggested above, and when so construed it calls for the whole three hundred and twenty acres of land.

III.   The tax suit is a further storm center in the case. Defendant urges that under the will of Joseph Weil, August J. Weil was made a trustee for the wife, Regine, and the son Harry or Henry G. Weil. The wife and August J. were made executors, and the administration of the estate closed in 1887. This was before the tax suit, and the wife had died before the tax suit. What was held in trust for her passed to the two boys upon her death. The will gave to August J. the homestead in St. Louis, and described personal property to be held for the wife during life or widowhood. It then specified that the son Harry should have $40,000 first, because August J. had been advanced that sum. It then provided that the remainder should be divided in three parts, one-third to go to August J. in trust for the mother, one-third to August J. absolutely, and the other third to Harry absolutely, but with the provision that, if at the time of the division Harry was under age, "I hereby direct that my son August J. Weil shall hold said one-third part as trustee for the use of the said Harry Weil until he shall have attained the age of twenty-one years," when it

should be turned over to him. There is also the following clause in the will:

"After the payment of my debts and of the said forty thousand dollars, I direct that all the residue of my estate of whatsoever nature and wheresoever the same may be situate, whether real, personal or mixed, not herein-before otherwise disposed of, shall be divided into three equal parts. If, in the judgment of my executors, it is necessary or desirable to sell any or all of my estate for the purpose of making such division, they are hereby empowered to make such sale or sales, and to execute to the purchaser or purchasers proper conveyances thereof."

The will fairly construed contemplated that the executors were to divide the property, and August J. Weil was to hold the brother's share until he became of age. There is nothing to show when Henry G. Weil became of age. Nor does the will show when it was written. For aught that appears in this record, Henry G. might have been of age when the father died. He was sued in 1891, for taxes, and filed an answer through attorneys. Both he and August J. then asserted that they were the owners of the land. No claim was made that there was a trust estate when this answer was filed. On the contrary, there was an express admission that these two parties were the owners of the land. Later in October, 1905, August J. Weil, as the sole surviving executor of the will of Joseph Weil, and he and his wife as individuals, made a deed to George Houck, Jr., and about the same time or a little before a deed from one Harry Weil was also made to George Houck, Jr. Under these deeds the defendant claims, and under them the court declared title to one hundred and sixty acres to be in defendant.

The defendant in this case stands in no better light than August J. Weil and Henry G. (Harry) Weil. [Proctor v. Nance, 220 Mo. 104, l. c. 116.]

If the two Weils were urging, after the filing of their answer, that the judgment did not bind them, because

there was a trust estate, and the property was held by a trustee, they would not be heard on the ground of estoppel. [Proctor v. Nance, supra; Austin v. Loring, 63 Mo. 19; Coney v. Laird, 153 Mo. l. c. 435.; 16 Cyc. 799.] Inconsistent positions cannot be taken, where they work injury. The purchasers at this tax sale had a right to rely upon the answer filed by the Weils.

With this view of the case we need not discuss. the question as to whether or not there was, in fact, a personal trust created by the terms of the Joseph Weil will, which was not closed with the final settlement of the estate, in 1887, as urged by defendant.

The foregoing are the decisive points in this case. The defendant has insisted upon the adjudication of title under his answer, relying upon the foregoing matters. It is wrong in them all, and it follows that under the prayer of defendant's answer the trial court should have decreed the title to the full three hundred and twenty acres to be in plaintiff.

Judgment is reversed and cause remanded with directions to the circuit court to enter a judgment for plaintiff for all the land involved, in accordance with the views expressed in this opinion. All concur.