ROBERT FADLER, RAYMOND FADLER, CHARLOTTE FADLER, HERMAN J. VOIGHTS, JR., WILLIAM FADLER, DORA MICHAEL, DOROTHY MICHAEL, ROBERT MICHAEL, CHARLES D. FADLER, RUTH FADLER, PAUL FADLER, DONALD FADLER, CATHERINE FADLER, JACKEY FADLER, EMMA WHIPPLE, EARL WHIPPLE, LUELLA WHIPPLE, RUTH WHIPPLE, HENRY WHIPPLE, WILBUR WHIPPLE, CAROLINE BAKER, GRACE BAKER, JACOB BAKER, PRINCE BAKER, ROSNELL BAKER, DEWEY BAKER, MYRTLE FADLER YOHE, *alias* YOKE, LEONA BAKER HUNT, OPAL MILLER, FRANCES HUNT, HELEN HUNT, JACK HUNT, MARY LEONE HUNT, ROBERT LEE HUNT, DORIS BAKER BISWELL, BETTY JO BISWELL, MARY JELLISON, GLADYS JELLISON, HAROLD JELLISON, JEANETTE JELLISON, VIRGINIA JELLISON, ED FADLER, CAROLINE FADLER REYNOLDS, HARRIET REYNOLDS, DORA SCHAEFER, VERNON FADLER, MARGARET FADLER, FRED FADLER, JOHANN FADLER, HEDWIG FADLER MEYER, TRINA FADLER MEYER, DORATCHE FADLER BOCKE, ADELE FADLER MULLMEYER, HEINRICH FADLER, HERMAN FADLER, HEINRICH VON HOLLEN, ANNA KATHERINE VON HOLLEN, HERMAN VON HOLLEN, DORA VON HOLLEN REHLING, ANNA WEHRKAMP HUSTEDT and HENRY HUSTEDT v. GEORGE H. GABBERT, EDITH MARIE GABBERT, CLARE F. DUVALL, HUME B. DUVALL, ESTHER SILVERS, ELMER B. SILVERS, ADELHEID SCHUMACHER, sometime calling herself ADELHEID FADLER or ADELAIDE FADLER or ADELAIDE SCHUMACHER, HENRY KNACKE, Guardian, GEORGE B. TRACEY, O. L. MONAHAN, FLORA MONAHAN, E. P. VAUGHAN, Appellants.—63 S. W. (2d) 121.

Division Two, September 4, 1933.

852

*James H. Harkless* and *E. B. Silvers* for appellants.

854

*A. N. Gossett, Henry S. Conrad* and *Harvey E. Hartz* for respondents.

FITZSIMMONS, C.—The question for decision in this case is whether the Circuit Court of Jackson County at Kansas City rightly overruled the separate demurrers to plaintiffs' amended petition, filed by two groups of defendants. Final judgment in favor of plaintiffs was entered, defendants having stood on their demurrers and declined to plead further. From this judgment defendants took two separate appeals which will be decided together.

Plaintiffs sued in equity to have avoided for fraud in their procurement two decrees, one in a suit to quiet title, the other in an action for partition, and also to have annulled certain deeds which were passed in the interval between the decrees. The land affected by the litigation consists of improved lots 236 and 237 in block 17, McGee's Addition to Kansas City, Missouri, fronting ninety-nine feet on the west side of Walnut Street, commencing at a point forty-nine and one-half feet south of the southwest corner of Fifteenth and Walnut Streets. The petition alleged that the land was of the reasonable value of $125,000. The demurrers are general and specific. It is necessary therefore, to set out with some detail the allegations of the amended petition which covers forty-four pages of the abstract. A summary of the petition is as follows:

Dietrich Fadler, *alias* Faedler, died at Kansas City, Missouri, February 17, 1917, owning the land described. He was unmarried and left no descendants. On February 20, 1918, there was presented to

the Probate Court of Jackson County at Kansas City and admitted to probate an instrument, dated January 27, 1916, purporting to be Fadler's last will. By this instrument Fadler purported to devise to Herman J. Voights all of Fadler's property including the land described above in trust "for the use and benefit of the heirs of said Dietrich Fadler for life with divers remainders or executory limitations, contingent and otherwise, to take effect upon the death of the last living or surviving of his grand-nephews and grand-nieces living at the time of his, Dietrich Fadler's, death." Robert E. Booth was named the executor of the will.

On February 19, 1919, George A. Fadler, a nephew of Dietrich Fadler, being a son of a predeceased brother, commenced an action in the Circuit Court of Jackson County at Independence to contest Fadler's will. The defendants named were Robert E. Booth, the executor, Herman J. Voights, the trustee, "the heirs of Dietrich Fadler named in said will of whom there were then living a large number," and also the unknown respective spouses, devisees, donees and grantees of the next of kin and heirs of Dietrich Fadler. In May, 1922, a jury trial of the will contest suit was had and resulted in a mistrial, the jury having failed to agree. The action was pending, awaiting a second trial at the time of the filing of the amended petition in the instant case.

Dietrich Fadler, at the time of his death and long prior thereto, lived in part of the buildings on the land in controversy, and according to the petition, he had in his employ as a domestic servant one Adelhaid Schumacher, who, after Fadler's death, filed in the office of the Recorder of Deeds of Jackson County a paper writing purporting to be an election by her to take one-half of the estate in lieu of dower. Adelheid Schumacher also exhibited for allowance to Robert E. Booth, executor of the will, her claim and demand for $6,000 for services as nurse and for taking care of Fadler prior to his death. Floyd E. Jacobs having been appointed administrator of the estate in place of Booth, executor, Adelheid Schumacher presented to Jacobs an amended demand for $6,000 for services as nurse and housekeeper. On January 24, 1920, the demand was, after a hearing in the Probate Court of Jackson County, settled and compromised with the administrator, Jacobs, whereby it was agreed that the demand should be compromised in the sum of $5,250 and classified as a demand of the second class and she should release and abandon all further claims against the estate "including her pretended claim as a common-law wife and widow." Of this transaction the amended petition states "that said Adelheid Schumacher well knowing that she was not the widow of said Dietrich Fadler abandoned her pretended claim of being such widow, and exhibited and presented, prosecuted and procured the allowance of her said claim or demand in said sum of $5,250.00;" that she collected the money from Floyd E. Jacobs, ad-

ministrator, and was thereby estopped and forever barred from claiming to be Fadler's widow, and that as a part of the same transaction in accordance with the compromise agreement, she executed a deed releasing any and all claims she may have possibly had to or against the property of Fadler, "and specifically released and relinquished the aforesaid lands to the heirs of said Dietrich Fadler if he died intestate and to his devisees if he died testate."

The amended petition then proceeds to specify the fraudulent acts in the procurement of the decree in the suit to quiet title. The petition charges that two Kansas City lawyers, who are among the defendants named, for the purpose of injuring plaintiffs and depriving them of their property, they having knowledge of the settlement and agreement of Adelheid Schumacher with Floyd E. Jacobs, administrator, and of the execution and delivery by her of the quitclaim deed for the heirs or devisees of Dietrich Fadler, procured and induced Adelheid Schumacher (under the name of Adelheid Fadler), who was then weak, aged, infirm and of unsound mind, to bring a suit against, among others, plaintiffs here which suit was filed January 23, 1925, in the Circuit Court of Jackson County, Missouri, at Kansas City, being suit No. 210647, in which Adelheid Schumacher suing under the name of Adelheid S. Fadler alleged that she was the owner in fee simple of an undivided one-half interest in the real estate described above.

The petition in the instant case sets out the names of the defendants in the suit of Adelheid Schumacher, substantially all of whom are plaintiffs in the instant case. The first named defendant in the Schumacher suit was Leona Baker Hunt, a plaintiff here, and the amended petition charges, among other fraudulent acts imputed to the attorneys, that the names of the defendants in the suit to quiet title and in the subsequent partition suit were purposely arranged so that the names of numerous parties were stated before the name of any defendant named Fadler or Voights (trustee), or Booth (executor), would appear as parties "and so that a person casually observing the proceedings in said suits would be less likely to connect the same with said Dietrich Fadler's property and estate." For the like purpose, it is charged, Herman J. Voights in the title suit, was not named trustee but as an individual. The suit to quiet title, which is No. 210647, and sometimes in our statement of the issues may be so designated, also named as defendants in the familiar statutory form, the unknown heirs of Dietrich Fadler, whose claims or interest in the lands in suit were as part owners in portions unknown to the plaintiff Schumacher and derived as heirs or next of kin of Dietrich Fadler, deceased, or "as devisees under a purported will of Dietrich Fadler, admitted to probate in the Probate Court of Jackson County, Missouri, February 20, 1918." The petition in suit No. 210647 alleged that all defendants were nonresidents of Missouri and that

they claimed to have some interest in the real estate adverse to plaintiff, and prayed the court to ascertain the same and enter a decree accordingly.

The petition further charges that the attorney-defendants obtained an order of publication in suit No. 210647 and caused the notice to be published in the Daily Record once a week for four weeks, although that newspaper was printed and issued daily in Kansas City except Sunday. No writ of summons was ever served upon or any notice except the publication ever given to any defendant, and none of the defendants in the suit to quiet title, including plaintiffs here, had any information of the bringing or pendency of the suit until October 16, 1928. The amended petition also charges that the attorney-defendants "wrongfully and fraudulently procured and caused to be entered on April 25, 1925, in the Circuit Court of Jackson County a judgment or decree purporting to adjudge and determine that said Adelheid S. Fadler was the owner of and entitled to an undivided one-half interest in fee simple in said lands," and on May 1, 1925, they caused to be filed for record in the office of the Recorder of Deeds of Jackson County, a certified copy of the decree. The amended petition also charges "that notwithstanding several of the defendants in said wrongful and fraudulent suit and decree were minors, under the age of twenty-one years; no guardian *ad litem* was appointed for them or any of them." The names and ages of these minor defendants, twenty-one in number in the suit to quiet title (plaintiffs here) are given.

The amended petition under review also charges that, after the entry of the purported decree, the attorneys on May 25, 1925, induced Adelheid S. Fadler (Schumacher) to execute to their respective wives, a warranty deed conveying an undivided one-fourth interest in the lands in controversy; that neither of the grantees, or any other person gave any consideration for the deed; and that the attorneys used the names of their wives as a matter of convenience to carry out their fraudulent and wrongful purposes.

Further allegations of the amended petition are: On or about June 17, 1926, Margaret Schumacher, sister of Adelheid Schumacher filed in the Probate Court of Jackson County an information setting out that Adelheid Schumacher was insane, and was the owner of a small amount of property of the value of about $3,500, including money and a small piece of real estate, which property she would be likely to squander unless a guardian were appointed. After personal service of notice upon Adelheid Schumacher, she on June 26, 1926, was found by the verdict of a jury to be insane and incapable of managing her business affairs. Henry Knacke was appointed guardian under a bond of $1,000, and he filed an inventory of the estate of the ward, showing real estate in Kansas City and in Kansas, Liberty Bonds,

a mortgage note and cash, all appraised at $8,892.50. The inventory did not disclose any interest in the property here in controversy.

On May 28, 1928, Knacke, as guardian of Adelheid Schumacher, insane, reported to the probate court that she had an undivided one-fourth interest in the Walnut Street real estate involved here and prayed for an order to sell the property at private sale for cash. Of this application for an order of sale the amended petition alleges that the filing of it was instigated and procured by the attorney-defendants "in pursuance of their said wrongful, malicious and fraudulent purpose of depriving these petitioners and the heirs and beneficiaries of the estate, whosoever they may be, of said Dietrich Fadler of their interest in said land and to appropriate and procure the same for their own benefit or for the benefit of members of their families."

The petition also states that Knacke, as guardian, went through the form of having the undivided one-fourth interest in the lots in suit appraised at $3,500, of selling the interest to one George B. Tracey for that sum, of filing and having approved a report of sale and of executing a deed to Tracey. The petition further charges that Tracey did not purchase the land for himself; that he allowed his name to be used as a matter of convenience in furtherance of the purpose to carry out the wrongful scheme to deprive "petitioners, and others, heirs or beneficiaries as the case may be" of the estate of Fadler; that Tracey did not pay any moneys to Knacke, the guardian, but that the entire consideration of $3,500 was paid by the two attorneys.

The amended petition recites that the existence of the deed dated May 25, 1925, by which Adelheid Schumacher purported to convey to the wives of the attorneys an undivided one-fourth interest in the land was kept secret and the same was not filed for record until May 4, 1928, three years and three days after a certified copy of the decree of April 25, 1925, was filed on May 1, 1925, in the recorder of deeds' office. The petition then recited separately and with precision the execution of six deeds by and to sundry defendants. As a result of these conveyances color of title to the one-fourth interest which Mrs. Schumacher conveyed to the defendant-attorneys' wives and also the one-fourth interest which Mrs. Schumacher's guardian sold to Tracey, in other words, the entire half interest which the decree in the suit to quiet title vested in Mrs. Schumacher, was vested one-sixth in George H. Gabbert, a straw man, one-sixth in Clare F. Duvall, also a straw party and the married daughter of one of the attorneys-defendant, and one-sixth in a person, unnamed in the petition, whom, it charges, the two attorneys-defendant, induced to purchase a sixth interest for $5,000 paid to the attorneys. The petition charges that the execution of all these deeds was procured by the attorneys-defendant in furtherance of their fraudulent intent to deprive plain-

860

tiffs of their interest in the land, and that the vesting in three persons in undivided portions of the one-half interest which the decree in suit No. 210647 vested in Mrs. Schumacher was brought about by these attorneys in order that they might bring a partition suit of all the land. This suit which sometimes we will call cause No. 288305, the attorneys instituted in the Jackson County Circuit Court at Kansas City in July, 1928. George H. Gabbert, a defendant here, was plaintiff in the partition action, and Clare F. Duvall, the unnamed innocent purchaser, and also the plaintiffs here and others, sued as unknown heirs or devisees of Fadler, were the defendants. The petition in the partition suit recited the undivided one-sixth interests of Gabbert, Mrs. Duvall and the innocent purchaser, alleged that plaintiffs here and the unknown defendants owned the other half, charged that the land was not susceptible of partition in kind, prayed for partition by sale, and alleged that the defendants, except Mrs. Duvall and the innocent purchaser, were nonresidents of Missouri. Mrs. Duvall and the innocent purchaser entered their voluntary appearance by answer, admitting all allegations of the petition in the partition suit and joining in the prayer thereof. An order of publication for all defendants other than the two entering their appearance was obtained and the same was published in the Daily Record once a week for four weeks and on no other days; that no guardian *ad litem* was appointed in the partition suit for any of the infant defendants named therein, being the same infant defendants mentioned in the suit to quiet title and who are plaintiffs in the instant suit. The petition here further charges that on October 29, 1928, defendant Gabbert and his attorney (one of the defendants here) and defendant Duvall had entered in said cause No. 288305 a decree or judgment purporting to find that Gabbert and Duvall and the unnamed third person each owned an undivided one-sixth part of the land and that the other defendants, known and unknown, including the plaintiffs in this case then living, owned the other one-half, the decree not purporting to find or determine the respective interests of the defendants in the partition suit other than Duvall and the other holder of the sixth interest. The petition further charges that none of the plaintiffs in the instant case had any notice, knowledge or information of the partition suit until October 16, 1928.

The petition also alleges that the plaintiffs herein having first learned on or about October 16, 1928, of the existence of the suits to quiet title and for partition, attorneys for the plaintiffs in the instant case prepared and, on October 24, 1928, they served a motion to set aside and a petition in review of the purported judgment or decree in the partition suit No. 288305 and asking leave to answer in said cause and to include in said answer a cross-petition to set aside the purported entry of said judgment or decree in said cause No. 210647 for fraud in the procurement thereof by reason of the facts among

others set up in the amended petition under examination. The amended petition further charges that at the time the motion and petition for review were served one of the defendant attorneys requested and the plaintiffs and their attorneys agreed to allow him time to consider the same before it should be filed, and he in turn agreed that in the meantime he would make no change in the title or status of the proceedings until he had so informed plaintiffs' attorneys. Notwithstanding this agreement, as the petition charges, the two attorneys defendant here pretending that through ignorance and inadvertance they had omitted to have guardians *ad litem* appointed for infant defendants therein, asked the court to set aside the purported entry of judgment or decree in the partition cause No. 288305; that the court made an order accordingly, and thereupon one of the attorneys paid the costs in said suit and voluntarily dismissed the action.

Other acts in the procurement of the judgments to which fraud are imputed and not heretofore stated in our summary of the petition are: The attorneys-defendant at all times knew and were chargeable with notice that all the heirs and devisees, as the case might be, of Dietrich Fadler were non-residents of Missouri and were represented in the affairs of the Fadler estate only by Jacobs, the administrator, and the several attorneys for the plaintiff and for the defendants in the will contest suit pending in the Circuit Court of Jackson County at Independence; that these attorneys and Floyd E. Jacobs, the administrator, were at all times well known and readily to be found in and about Kansas City, but that the accused attorneys purposely omitted and refrained from inquiry of or communication with any of these persons having to do with said lands, estate and the alleged will of Fadler and the suit to contest the same, as attorneys, executor, trustee or administrator, and from inquiry of or communication with any of the parties to the will contest suit and from communication of the fact of the pendency of the two suits to quiet title and in partition to any of the parties or persons. They purposely omitted to include as a defendant in either of the actions brought Floyd E. Jacobs, administrator, the only resident of Missouri representative of the Dietrich Fadler estate and property. The attorneys-defendant knew that the buildings upon the land were occupied by tenants, under Voights, with the consent of the other parties to the will contest suit and not under Adelheid Schumacher, and that neither she nor anyone claiming under her, before or after the bringing of the suits to quiet title and in partition ever claimed any of the rents or possession of the land; but that the two attorneys, their confederates, agents and persons of convenience purposely refrained from making any claim of or giving any notice of any such claims to any tenants or occupants of the land. At the time of the entry of the orders of publication the practice of the Circuit Court of Jackson

County and the law was that the same should be published in each secular daily issue of the newspaper in which the same was ordered to be published, but for the wrongful purpose and intent stated in the petition and for the elimination of the likelihood or probability of the plaintiffs in the instant suit acquiring actual notice of suit No. 210647, the accused attorneys caused the order of publication to be published only once a week for four weeks. With the same intent they did not file in the recorder's office a *lis pendens* notice in either the suit to quiet title or for partition.

The defendants named in the amended petition are Gabbert and wife, Mrs. Duvall and husband, the two attorneys and their wives, also Adelheid Schumacher, Henry Knacke, guardian, George B. Tracey and E. P. Vaughan. The record shows that during the pendency of the action in the court below, Knacke resigned as guardian and curator of Adelheid Schumacher, that Herman Schumacher was appointed in place of Knacke, and that Schumacher withdrew an answer which Knacke had filed, and instead filed demurrer. While the appeal has been pending in this court and prior to the submission of the appeal there was suggested the death of Adelheid Schumacher, the discharge of Herman Schumacher, her guardian, the appointment of Schumacher as administrator of her estate and the names of twenty-two heirs of Adelheid Schumacher. The cause accordingly was ordered to be revived and proceed. There are sixty-three plaintiffs some of whom are nephews and nieces of Dietrich Fadler, deceased, others are grandnephews and grandnieces and others again are great-grandnephews and great-grandnieces. They are descendants of one brother and one sister and two half-brothers of Fadler, all four of whom are dead. The amended petition prays that the pretended judgments and decrees in the suit to quiet title and in the partition suit be declared null and void; that the instruments purporting to be deeds of conveyance or quitclaims and the guardian's deed mentioned in the petition be declared null and void and that the clouds upon the title of plaintiffs as the same may be in the land in controversy be removed and that the defendants and all persons claiming under them be adjudged to have no estate, interest, right or claim.

In view of the suggestion here of the death of Adelheid Schumacher, the separate demurrer to the amended petition which was filed in her name and in that of Schumacher, her guardian and curator, will be treated as that of Herman Schumacher, her administrator and of her heirs. The other defendants join in a separate demurrer.

Both demurrers allege that the amended petition does not state a cause of action and that there is a misjoinder of parties plaintiff. The Schumacher demurrer states the misjoinder thus: "That by the allegations of said amended petition, the paper writing therein referred to purporting to be the last will of Dietrich Fadler, deceased,

and probated as such, provides that said property shall be held in trust until the death of all grand-nephews and grand-nieces of said Dietrich Fadler who may be living at the time of his death, when said real estate should thereunder vest in his, Dietrich Fadler's legal heirs. The petition further states that said Dietrich Fadler died on February 17th, 1918. The petition further states the degree of kinship of the various plaintiffs to Dietrich Fadler extending to the degree of great-grand-nephews and great-grand-nieces, and shows that at the time of the death of said Dietrich Fadler, the following and only the following persons were the heirs of Dietrich Fadler, to-wit:'' There follow the names of twenty-seven plaintiffs and the further recital that there is therefore a misjoinder of parties in that the other kinsmen, plaintiffs in the cause, thirty-six in number and named in the demurrer, could not take of the property in question under the will as pleaded in the petition.

I. *Misjoinder*. By way of preliminary observation, we may say that a defect of parties plaintiff means too few parties and hence is not synonymous with misjoinder of parties which means an excess of parties, one of the grounds of complaint here. [31 Cyc. 294.] We may also note that Section 770, Mo. Statutes Annotated 1929, makes a defect of parties cause for demurrer, but does not in terms make misjoinder a cause. However, a misjoinder of parties plaintiff is ground for demurrer for the reason that in such case the petition does not state a cause of action. [Akins v. Hicks (Mo. App.), 83 S. W. 75; Barbour on Pleadings to Actions (2 Ed.) 459.] The writers of the briefs in support of the second demurrer appear to have had this view when they withdrew the question of misjoinder and stated that they would discuss the matter of parties only in connection with the question whether certain minor plaintiffs were entitled to relief under the allegations of the petition. But under the pleadings and briefs the misjoinder of parties plaintiff must be examined.

Upon the face of the petition it appears that, at the time of the death of Dietrich Fadler, his heirs at law, if at the final determination of the will contest suit, it should be found that he died intestate, consisted of fifteen nephews and nieces, and ten grandnephews and grandnieces. Subsequent to the death of Dietrich Fadler one of the nephews died leaving a widow and two children. Thus, according to defendants, the heirs at law of Dietrich were fourteen nephews and nieces, twelve grandnephews and grandnieces and the widow of a deceased nephew, making up the twenty-seven heirs mentioned in the Schumacher demurrer. The other plaintiffs were grandnephews and grandnieces and great-grandnephews and great-grandnieces whose parents or grandparents were living and were included in the list

of heirs, and who therefore were not heirs of Dietrich Fadler. We defer examination of this question for the moment.

■■ Defendants next contend that the great-grandnephews and great-grandnieces could not take under the will, if it should be sustained, for the reason that the will as pleaded devised the land in question to a trustee until all of Fadler's grandnephews and grandnieces, living at the time of his death, are deceased, and that when the last of said grandnephews and grandnieces will have died, the trustee shall convey the property to Dietrich Fadler's heirs. The word "heirs" defendants contend, is defined by statute (Sec. 307, Mo. Stat. Ann. 1929) to mean those who would take at the time of his death. Therefore, those plaintiffs who are great-grandnephews and great-grandnieces not being heirs in the sense limited by defendants, cannot inherit under the will. The fallacy of this argument is that defendants limit the meaning of the word "heirs," as used in the will, to the definition of the word in one of the sections of the statutory law of descents and distributions, applicable to the estates of persons who die intestate. The word "heirs" like any other word, phrase or clause, occurring in a will, is to be construed according to the intention of the testator as that intention may be gathered from the whole will. [Reinders v. Koppelman, 94 Mo. 338, 7 S. W. 288.] "As to the intention of the testator in the use of the word 'heirs' in his will, the court simply held that he meant such heirs of the said Anna (his wife) as should be in existence at her death, and not such of her heirs as were in existence at the time of the death of the testator, or at the time he wrote his will." And this court held that construction to be correct under well known rules governing the construction of wills.

We do not intend to construe the meaning of the word "heirs" as used in the will of Fadler, since that instrument is not before us. We limit ourselves to the statement that under that will as pleaded in the first amended petition great-grandnephews and great-grandnieces who are plaintiffs here, will not be precluded from taking as testamentary heirs their respective shares of Fadler's estate at the death of the last of the grandnephews and grandneices by reason of the fact that they, great-grandnephews and great-grandnieces, were not statutory heirs at the time of Fadler's death.

■ This is a suit in equity in which misjoinder of parties plaintiff is not to be judged by the more strict rules applicable to an action at law. [Akins v. Hicks, 109 Mo. App. 95, 83 S. W. 75.] Adams' Doctrine of Equity (8 Ed.), section 312, page 561, thus states the distinction: "At law, a disputed issue is alone contested; the immediate disputants alone are bound by the decision; and they alone are the proper parties to the action. In equity, a decree is asked, and not a decision only; and it is therefore requisite that all

persons should be before the court, whose interest may be affected by the proposed decree, or whose concurrence is necessary to a complete arrangement.''

1 Pomeroy's Equitable Jurisprudence (4 Ed.), sections 113 and 114, page 131 et seq., thus points out the broad scope of the rules of equity governing proper joinder:

''The common-law rules of procedure are fixed, rigid, arbitrary, technical, while those of the equity suit are natural and flexible. In no features is the contrast greater than in respect to parties and to judgments. The doctrine of the common law concerning the parties to actions, their joint or several rights and liabilities, and the form of judgment based upon these respective kinds of right and liability, are the crowning technicality of the system, resting upon verbal premises which mean nothing, and built up from these premises by the most accurate processes of mere verbal logic. . . . The equitable doctrines with respect to parties and judgments are wholly unlike those which prevailed at the common law, different in their fundamental conceptions, in their practical operation, in their adaptability to circumstances, and in their results upon the rights and duties of litigants. The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit. Its fundamental principle concerning parties is, that all persons in whose favor or against whom there might be a recovery, however partial, and also all persons who are so interested, although indirectly, in the subject-matter and the relief granted, that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit; and it is not ordinarily a matter of substantial importance whether they are joined as plaintiffs or as defendants, although this question of procedure is regulated to a certain extent by rules based upon considerations of convenience rather than upon any essential requirements of the theory.'' To the same effect see Gartside v. Gartside, 113 Mo. 348, 20 S. W. 669; Ulrici v. Papin, 11 Mo. 42; 21 C. J. 308.

Under these broad rules we are of opinion that plaintiffs have a sufficient interest in the *res* which is the subject matter of this action to make them parties, properly joined in the first amended petition. The will contest action was begun February 19, 1919. It was still pending when this suit in equity was instituted on October 26, 1928, and when the amended petition was filed on October 4, 1929. This petition fairly and fully contemplates the undetermined question whether Fadler's property is to descend to his heirs or is to pass under the terms of the will. One nephew has died since Fadler passed on. It is quite possible that before the will contest is ad-

judicated the other nephews and nieces may die and thereby leave a new group of persons who would take in the event of a final determination of intestacy. The amended petition seeks a remedy effective and complete whatever may be the outcome of the will contest suit and whosoever may die in the meantime.

Let us also examine the charge of a misjoinder of parties for want of a possible interest of some of them in the property affected in the light of the allegations of the amended petition concerning the suit to quiet title and the action in partition. Adelheid Schumacher, plaintiff in the suit to quiet title, alleged in her petition that all the defendants therein (plaintiffs here) claimed to have some interest in the land adverse to her. The order of publication procured by her attorneys made like allegations. The decree in that case found that Adelheid Schumacher had a half interest. While the amended petition does not state in whom the decree undertook to vest the other half, we may safely infer that the decree found that the defendants (plaintiffs here) owned the second half. We draw this inference from the fact that the petition in the partition suit alleged that plaintiffs here owned an undivided one-half of the land, and that the interlocutory decree in partition so found "without purporting to find, adjudge, or determine the respective interests." How then, can defendants now be heard to argue in this equity suit, on an issue of misjoinder raised by them, legal questions of the respective interests and non-interests of plaintiffs as heirs at law or as testamentary beneficiaries when the defendants here and those whom they represent pleaded and procured decrees finding. in the actions which this suit seeks to annual, that all plaintiffs here owned a half interest? After all, the ultimate question upon these appeals concerns the ownership of an undivided one-half interest in the land affected. And that is the half which, under the decree in the suit to quiet title, was vested in Adelheid Schumacher, and which, by her conveyance and a conveyance by her first guardian Knacke and by subsequent conveyances finally was transferred to defendants Gabbert and Clare F. Duvall and the innocent purchaser. For the reasons stated we rule that there is not a misjoinder of parties plaintiff.

II. *Statement of cause of action.* In support of the charge that the amended petition does not state a cause of action. defendants say that under Sections 1081 to 1087. Revised Statutes 1929, plaintiffs could have filed a petition for review within three years from the date of the recording of the judgment in the suit to quiet title. Plaintiffs having failed to avail themselves of this remedy defendants insist that the judgment became absolute.

As plaintiffs here were constructively served by publication in the suit to quiet title and as they did not appear and defend the action. they come within the class of litigants who, in proper cases, and

within three years after the recording of the judgment, may avail themselves of the benefits of Sections 1081-1087, Revised Statutes 1929. But defendants are in error in their conclusion that plaintiffs are absolutely barred by Section 1083, Mo. Statutes Annotated 1929 (one of the sections upon which they rely), which provides that "if such petition for review be not filed within three years after such final judgment is rendered, the same shall stand absolute." That section does not deprive a court of equity of its power to afford a remedy for fraud practiced in the procurement of a judgment, even though that remedy is not sought within three years after the rendition of the judgment. With the fact in mind that Section 1083, Revised Statutes 1929, is, *verbatim,* the same as Section 3686, Revised Statutes 1879, we quote in support of the views last expressed from Irvine v. Leyh, 102 Mo. 200, 14 S. W. 715, l. c. 716:

"We here notice the contention made by the defendant, Leyh, that this suit is barred by Section 3686 of the Revised Statutes of 1879. That section and the preceding and succeeding sections provide for a review where the defendant is notified by publication only, and does not appear to the action. The petition for review must be filed within three years after final judgment, and, if not filed within that time, the judgment stands absolute. To obtain such review it is not necessary to show fraud in procuring the judgment, but it will be sufficient to show that the petition, upon which the judgment was procured, is untrue in some material matter, or that the party asking the review has and had a good defense. The plaintiffs here do not ask a review under the statute. They seek to set aside the attachment judgment because procured by fraud. Courts of equity have an inherent power to set aside judgments obtained by fraud, and that power is not taken away by the statute providing for a review in the cases before mentioned. This suit is not founded on the statute, and hence Section 3686 constitutes no bar." In the foregoing case, the plaintiffs commenced their action nine years after the rendition of the judgment. In the instant case, plaintiffs filed suit three years and six months after judgment, in cause No. 210,647 to quiet title.

III. For the equitable reasons stated in the foregoing paragraph, the demurrer should not be sustained, as defendants urge it should be, because plaintiffs within three years after judgment did not resort to a writ of error *coram nobis.* This writ would have been more appropriate to the facts stated in the amended petition than a proceeding under Sections 1081-1087. For now it is the law that a motion contemplated by these statutes "must be one based upon an irregularity which is patent on the record," while the purpose of a writ of error *coram nobis* "is to make apparent to the court by evidence *dehors* the record some error of fact which did not appear of record and which was unknown to the court." [State ex rel.

Potter v. Riley, 219 Mo. 667, 118 S. W. 647, 1. c. 651.] A motion in the nature of a writ of error *coram nobis* might have been peculiarly suitable to those minor plaintiffs here whose infancy was not brought to the attention of the court and for whom guardians *ad litem* were not appointed in cause No. 210,647. [Powell v. Gott, 13 Mo. 459.] But there the object of the motion was to correct an error of fact upon which certain proceedings in law had been based, the error of fact being the assumption that a minor defendant was of full age. Here the fact, as charged in the amended petition, that in the suits to quiet title and for partition, the minority of certain defendants was not suggested, is merely alleged as one of the badges of fraud. We may add, without citation of authorities, that the redress of wrongs to infants is peculiarly within the cognizance of courts of equity. For these reasons we find no merit in the contention that the demurrer should have been sustained because plaintiffs did not sue out a writ of error *coram nobis*.

■ IV. Defendant's next contend that plaintiffs' amended petition does not state a cause of action for equitable relief for fraud in the procurement of the judgment in the Schumacher suit to quiet title, cause No. 210,647. The settled rule is thus stated in Irvine v. Leyh, 102 Mo. 200, 14 S. W. 715, 1. c. 717:

. "The fraud for which a judgment will be vacated must be a fraudulent act in procuring the judgment. If the cause of action is vitiated by fraud, that is a defense. and it must be asserted in the action in which the judgment is rendered, unless its interposition is prevented by the fraud of an adversary. (Cases cited.) The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was founded. [United States v. Throckmorton, 98 U. S. 61.] The principle thus so strongly stated in the cases cited proceeds upon the ground that the party had an opportunity to appear and interpose the defense in the suit in which the judgment complained of was rendered."

But the proper classification, under these rules of distinction, of the acts of fraud charged or proved in a particular case sometimes is difficult. In some cases, the act of fraud in one sense vitiates the cause of action and in another sense it goes to the procurement of the judgment of which complaint is made. This court so found in the case of Wonderly v. Lafayette County. 150 Mo. 635, 51 S. W. 745.

The leading case of United States v. Throckmorton, 98 U. S. 61, cited in Irvine v. Leyh, supra, clearly states the character of frauds which go to the procurement of the judgment. After pointing out the modes of relief which the law affords a defeated party by motion

for a new trial, writ of error, appeal and bill for review, in accord with the rule framed for the repose of society, the United States Supreme Court said (98 U. S. 1. c. 65.):

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. (Cases cited.) In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court. On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed." We do not epitomize the facts of this case but it is a clear example of a charge of fraud which did not enter into the procurement of the judgment.

On the other hand a clear case of fraud in the procurement of a judgment is Ward v. Quinlivin, 57 Mo. 425. That was a suit upon a New York judgment. The Missouri trial court refused to allow defendant to offer proof of fraud in the procurement of the foreign judgment and the Supreme Court reversed the judgment and remanded the cause with directions to let in the proof. The grounds of fraud which this court held went to the procurement of the judgment were that plaintiff plied defendant with liquor until he became drunk. While defendant was in this condition, plaintiff induced defendant to sign an obligation upon which plaintiff sued him in a New York court. Defendant with counsel went to court to defend the action. Plaintiff and his attorneys, with a view to cheat and defraud defendant stated that they did not have a cause of action, that they intended to dismiss the suit, and that defendant might go home. Defendant relied upon these assurances and departed. After he had moved to Missouri, plaintiff took judgment against defendant in the New York court and sued upon the judgment in Missouri.

In the twilight zone between the clear cases of United States v. Throckmorton, supra, and Ward v. Quinlivin, supra, are many cases, less easy of decision by reason of the infinity of fraud. These cases come quite justly within the comments of Judge LAMM in Howard v. Scott, 225 Mo. 685, 125 S. W. 1158, l. c. 1165 et seq., in which he said: "What is fraud? No statute and no judge has been so daring and unwise as to define it by hard and fast rules." After restating the rule quoted above from Irvine v. Leyh, supra, he made this comment: "Nevertheless no court has undertaken to point out and define the particular frauds which will vitiate a judgment, any more than it has to define fraud generally, and many cases attest the acute diligence of courts in classifying facts as extrinsic and collateral in order to save the administration of justice from the heavy reproach of enforcing an unconscionable advantage sounding in fraud in procuring a judgment."

In Marley v. Norman's Land and Mfg. Co., 289 Mo. 221, 232 S. W. 704, this court gave full relief to plaintiff who relied upon fraud in the procurement of a judgment. One Norman instituted three suits having the same general object to acquire title to certain land. In each case he had different attorneys who did not cooperate. The first suit having been abandoned, the two others were begun about the same time. In one there was personal service. In the other in which the judgment complained of was had, there was service by publication. Of this mode of service this court observed: "The fact that Marley was sued in Case No. 3, and personally served, was well calculated to prevent him and his counsel from scrutinizing the county papers for another suit by publication in which his land might be affected." And one of the ear marks of fraud, noted by this court was that, in Suit No. 2, Norman directed his counsel to advertise the notice of publication in a paper of limited circulation printed and published in a small town some distance from the county seat.

In the case of Irvine v. Leyh, 102 Mo. 200, 14 S. W. 715, l. c. 717 (1890), BLACK, J., observed that in the cases from which he deduced the general rule which we have quoted the defendant in the first suit appeared or had actual notice and might have interposed the fraud as a defense. For this reason he expressed the opinion that the rule of the cases cited could not be applied in all its strictness to a case where the defendant had been brought in by newspaper notice only, had no actual notice of the suit and as a consequence had no real opportunity to defend. This view did not receive a carrying vote and two of the judges expressed the opinion that no distinction whatever should be made between those cases in which there is personal and those in which there is constructive service. In Howard v. Scott, 225 Mo. 685, 125 S. W. 1158, l. c. 1165 (1910), LAMM, J., expressed a strong personal concurrence in the views of BLACK, J., supra, and he called attention to the fact that nine years after the decision in

Irvine v. Leyh, supra, VALLIANT, J., in Wonderly v. Lafayette County, 150 Mo. 635, l. c. 650, 51 S. W. 745, 45 L. R. A. 386, 73 Am. St. Rep. 474, without any dissent, gave the *dictum* of BLACK, J., as the reason for the rule laid down. The "reason" in Wonderly v. Lafayette County, supra, to which LAMM, J., in Howard v. Scott, supra, referred is as follows (150 Mo. 1. c. 650):

"The reason of the doctrine that equity will not entertain a bill to set aside a judgment merely on the averment that the cause of action on which it is founded is tainted with fraud, is that the party had an opportunity to interpose that defense in the suit in which the judgment was rendered. [Irvine v. Leyh, 102 Mo. 200, l. c. 207.] But when the defendant is prevented by the fraud of the plaintiff from making the defense, and when as in this case the defense rests in the peculiar knowledge of the plaintiff and he conceals it from defendant, the fraud attaches to the judgment itself and vitiates it; it is a fraud in procuring the judgment."

It would appear therefore that while the dissenting judges in Irvine v. Leyh, supra, were right in saying that no distinction should be made between personal service cases and publication service cases, yet that BLACK, J., was correct in the sense in which his opinion was interpreted in the Lafayette County case. Defendants who have been personally served have less excuse to cry fraud than those who have had no actual notice. The review statutes, Sections 1081-1087, Revised Statutes 1929, which we have examined in this case, recognize the fact by allowing to defendants who have been served by publication three years after judgment in which to reopen the case. But if after judgment the plaintiff shall serve the defendant with notice of the suit and with a copy of the judgment, Section 1082 cuts down the period of review to one year.

Other cases supporting the contentions of plaintiffs that the amended petition states a cause of action are: Mangold v. Bacon, 237 Mo. 496, 141 S. W. 650; Davidson v. Real Estate and Investment Co., 226 Mo. 1, 125 S. W. 1143; Gurley v. St. Louis Transit Co. (Mo. App.), 259 S. W. 895; Dorrance v. Dorrance, 242 Mo. 625, 148 S. W. 94. Cases not heretofore cited which give instances of want of equity to set aside judgments for fraud are: Shemwell v. Betts, 264 Mo. 268, 174 S. W. 390; Gallagher v. Chilton, 192 S. W. 409; Wolf v. Brooks, 177 S. W. 337; Payne v. O'Shea, 84 Mo. 129; Wabash Railroad Co. v. Mirrielees, 182 Mo. 126, 81 S. W. 437.

Under the applicable rules as we gather them from all the cases mentioned herein, and from many other cases, some cited by the parties and others not, we are of opinion that the amended petition states a cause of action. Take the allegations that Adelheid Schumacher placed on record a claim as common-law wife and widow to one-half the estate; that later she presented a demand for services as nurse; that she compromised her demand for a sum paid to her

and, as part of a general compromise, that she executed a deed, abandoning and releasing her claim as a widow. That was a course of conduct which, paraphrasing the words of this court in Howard v. Scott, 225 Mo. 685, 125 S. W. 1158, "lulled the plaintiffs to sleep on the question of their title. They had no call to look out for a suit on the same subject matter by Adelheid Schumacher, thenceforward." This conduct too was akin to some of the devices used in the already cited and quoted case of Marley v. Norman's Land & Manufacturing Co., 289 Mo. 221, 232 S. W. 704. Of those devices this court said (289 Mo. l. c. 229):

"Norman is responsible for Suit No. 3, because he had directed his counsel, Kelso, to reinstitute the suit dismissed in 1909, Suit No. 1. If this act tended to abate the vigilance of Marley, and tricked him out of a defense in Suit No. 2, it was not only a fraud upon Marley, but upon the court who rendered a default judgment in Case No. 2. This filing of a case and procuring personal service therein was well calculated to mislead Marley as to there being another action pending, and, as said, this was the act of Norman. What his agent and attorney did, in law and equity, he did, and if the act misled Marley, and tricked him out of a defense in Case No. 2, then such fraud entered into the judgment herein sought to be set aside."

All Missouri cases and all other cases emphasize as an act of fraud entering into the procurement of a judgment any conduct which tends to trick an adversary out of a defense or to blind him to the pendency of an action. In the instant case, the amended petition pleads the mentioned course of conduct of Adelheid Schumacher and of her attorneys, as a trick designed to prevent plaintiffs from appearing in and defending against the suit to quiet title. These charges of the petition are made special grounds of demurrer by defendants, who contend that Adelheid Schumacher acted within her legal right. As pleaded the charges impute fraud nevertheless.

Then there is the charge of fraud ascribed to the action of the attorneys-defendant in advertising the notice of the order of publication in the suit to quiet title only once a week in a daily newspaper in Kansas City. Defendants plead the legality of this publication as a separate cause of demurrer. We do not concern ourselves with the sufficiency of the publication, but with the *innuendo* of fraud which the petition places upon it. In the case of Marley v. Norman's Land & Mfg. Co., supra, we noted that this court in its opinion placed a badge of fraud upon the insertion of an order of publication in a newspaper of limited circulation printed in a small town some distance from the county seat. Yet that publication was beyond doubt legally sufficient. By the same reasoning it readily may be granted that there is no law fixing the order in which the names of many defendants should be arranged in the caption of a petition and order of publication. But as pleaded the placement of the names of the

defendants in the petition in the suit to quiet title was, like the scant publication of notice, a device intended to prevent the defendants from obtaining knowledge of the pendency of the action.

Then there is the more serious charge of the petition that the attorneys-defendant, acting for the respective plaintiffs in the suits to quiet title and in partition, did not have guardians *ad litem* appointed for the minor defendants in those cases. We disregard the special demurrer predicated upon the contention that this proceeding was lawful. Neither do we stop to consider the point made by plaintiffs that the amended petition states a separate cause of action in favor of the infant plaintiffs on the ground that guardians *ad litem* for them were not appointed. We heed alone the charge of the amended petition that, in perpetration of fraud against plaintiffs and upon the court in the procurement of judgment entries in suits Nos. 210647 and 299305, and for further preventing and rendering less likely actual notice in fact to any person concerned, the attorneys-defendant failed and refrained from informing the court of the non-age of certain of the plaintiffs (defendants in those causes); and procured the judgments to be entered without the appointment of guardians *ad litem*. Measured by the standard that acts, tricks and devices, intended to avert a defense of an action amount to fraud in the procurement of a judgment, this particular charge is the major specification of the amended petition. If the non-age of certain of the defendants had been suggested the resultant appointment of guardians *ad litem* would have brought to the timely attention of all defendants, adults and minors, the pendency of the two actions. We have pursued this phase of the case further than necessary to make clear our reasons for holding that the petition states a cause of action.

V. Defendants by their demurrers specially and separately assail all allegations of the amended petition concerning matters occurring after the rendition of the judgment in the suit to quiet title. They insist that these allegations in no degree tend to support the charge of fraud in the procurement of that judgment. These allegations relate to the execution of a deed by Adelheid Schumacher, of deeds by her grantees, of the insanity proceedings, of the acts of her guardian and of the ultimate vesting in defendant Gabbert and others of the half interest in the lands decreed to Adelheid in the suit to quiet title. The amended petition not only seeks to have set aside the judgment in the suit to quiet title, but it also prays to have annulled the several deeds pleaded and to have removed the cloud on plaintiff's title created by the conveyances and by the proceedings in partition. We see no merit in these special grounds of demurrer.

No reversible error appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.