**LINCOLN STEEL, INC. and Robert J. Chapman and Elizabeth Chapman, Appellants,**

v.

**MID–CONTINENT NATIONAL BANK, Respondent.**

**No. WD32845.**

Missouri Court of Appeals,
Western District.

Dec. 7, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 1, 1983.

Application to Transfer Denied March 29, 1983.

**810**

Charles C. Shafer, Jr., Kansas City, for appellants.

Douglas Y. Curran, Lawrence M. Berkowitz, Stinson, Mag & Fizzell, Kansas City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The circuit court rendered judgment against appellants Lincoln Steel and Chapman spouses, officers of the corporation, in favor of respondent Mid-Continent Bank and Civic Plaza Bank [not joined on appeal] on a series of promissory notes executed by Lincoln Steel and Chapmans jointly and severally. The claim of each bank was originally by separate suit, but the notes of both banks were secured by the accounts receivable of Lincoln Steel, and the suits were consolidated for trial to determine priority between the creditors as to the accounts receivables. Lincoln Steel and the Chapmans, defendants, counterclaimed in each suit on allegations—among numerous others—of intentional disparagement of the Lincoln credit, tortious interference with its business and conversion. Mid-Continent cross-claimed against Lincoln for false representations. The judgment adjudicated contentions in favor of the Banks and against Lincoln Steel and the Chapmans.

Lincoln Steel and the Chapmans appealed from the Mid-Continent judgment only. Those parties concluded a settlement thereafter and the appeal was dismissed. The terms of settlement, among others, included satisfaction of a judgment against Lincoln Steel and the Chapmans for some $150,000 and payment of some $7,000. A year later, Lincoln Steel and the Chapmans moved the circuit court to set aside the judgment in that separate action [CV75–4334]—later consolidated with the Civic Plaza Bank petition, which went to judgment and has since become final—on the allegation that the judgment was procured by fraud. The motion was accompanied by a memorandum of suggestions. The memorandum, a miscella-

ny of bare assertions, epithetical allusions and simple chatter, was nevertheless interspersed with content of fact and documentary exhibits. The memorandum was subscribed by the affidavit of Robert J. Chapman.

The contentions of fraud discernible from that intermixed pleading are that the judgment for Mid-Continent Bank [case No. CV75–4334] was concocted by forgery of the Chapman signature on a UCC form [attached as an exhibit] used by the Bank to collect the Lincoln Steel accounts receivable, that the extent of the Mid-Continent security interest in those assets was altered on other copies of the UCC form [also attached], and that several Mid-Continent employees were encouraged to commit perjury to induce a favorable judgment. The memorandum explains that the forgery and false evidence came to notice for the first time long after that suit was concluded by the settlement when Mid-Continent [for some reason unexplained] dispensed the closed litigation file to Chapman, a defendant. The memorandum requested a hearing on the merits of the motion. The circuit court nevertheless entered judgment against the motion without a hearing, and Lincoln Steel and the Chapmans appeal.

■ They contend the motion stated a cause of action so that the adjudication without evidence was not valid. Mid-Continent Bank responds that the rules of procedure allow a court to expedite a motion by decision without a hearing. Rule 55.30(b). A motion to set aside a judgment for fraud, however, notwithstanding the rubric of the pleading, amounts to a separate action in equity for that purpose when the averments suffice to invoke the substantive cause of action. *J.R. Watkins Company v. Hubbard*, 343 S.W.2d 189, 195[4] (Mo.App.1961). The trial court understood that the law discerns no distinction in the stature of a pleading for that purpose and treated the motion as

a separate bill in equity, but held nevertheless that allegations were not sufficient to invoke adjudication. We sustain that judgment.

■ A court of equity does not usually interfere with a judgment at law or examine the intrinsic process of adjudication, but leaves it to each party to litigate with diligence. *Reis v. La Presto*, 324 S.W.2d 648, 653[8–9] (Mo.1959). Equity will annul a judgment for fraud, but only where the deceit was extrinsic to the subject matter litigated so as to distract the suitor from a trial or from the full presentation of the case. *Hemphill v. Hemphill*, 316 S.W.2d 582, 586[5–7] (Mo.1958). In such a case, the fraud—although practiced by one party upon the other—goes to the very procurement of the judgment [*Fadler v. Gabbert*, 333 Mo. 851, 63 S.W.2d 121, 132[15] (1933)] and so perpetrates a fraud on the court as well as on the injured party. 3 Pomeroy, Equity Jurisprudence § 919a (5th ed. 1941). The limitation of this remedy to extrinsic fraud does not describe an impotency of equity, but rather is imposed by the cogent public policy that litigation shall end. *Daffin v. Daffin*, 567 S.W.2d 672, 678 (Mo.App. 1978).

■ The motion and memorandum, understood as the plenary pleading, do not state a cause of action for relief from a judgment procured by an extrinsic fraud. The allegations of the motion charge, and the averments of fact describe, that the documentary evidence presented to prove the causes of action were forged and that the witnesses were suborned. These are allegations that evidence presented on the merits of the cause was forged and perjured. They describe the process of adjudication intrinsic to any judgment which the litigants themselves must protect with diligence against perjury or other taint. *Winchell v. Gaskill*, 354 Mo. 593, 190 S.W.2d 266, 271[3, 4] (1945).[1] A judgment proved by

---

1. The fraud which the Chapmans allege rendered the judgment subject to annulment by equity, among the other averments, appertained to the forged Chapman signatures on security agreements. The usual discovery pro-

cedures are one ready means by which the integrity of evidence the adversary proposes to adduce may be tested. The transcript excerpt which accompanies the Mid-Continent brief, and which the Chapmans do not dispute,

**812**

fraud rather than procured by fraud—even where the means of that proof is perjury and false documents—does not have the solicitude of equity—unless accompanied by other and collateral acts of fraud. *Barker v. Friendly American, Inc.*, 606 S.W.2d 457, 459[5–7] (Mo.App.1980); McClintock, Handbook of the Principles of Equity § 171 (Hornbook Series 2d ed. 1948).

The motion does plead an ostensible collateral fraud extrinsic to judgment: that the Mid-Continent perjury and forgery prevented the Chapmans from the presentation of defenses and causes of action—typical grounds for equitable relief from a fraudulent judgment. *In re Kerr*, 547 S.W.2d 837, 840[4–6] (Mo.App.1977). The averment, however, merely states a conclusion of law and does not amount to a statement of "the circumstances constituting fraud" that the law requires of a pleading which invokes that ground for substantive relief. Rule 55.15; *Green v. Green*, 606 S.W.2d 395, 397[1, 2] (Mo.App.1980). Nor do the facts gleaned from the memorandum subscribed by oath aid to supply that deficiency. The authorities cited by the Chapmans all draw the distinction between a judgment procured by fraud and one proved by fraud and deny relief in equity on the *facts* the Chapman augmented motion pleads.

*Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284 (1945), which the Chapmans assert in particular, does not sustain the right they invoke. There the attorney for the plaintiff [but without her knowledge] conspired with the witnesses at outset of trial to fabricate a cause of action, and the defendant sought to set aside an adverse judgment on account of that fraud. The court [l.c. 287[1, 2]] reaffirmed the basic principle that false evidence, as such, is not such a fraud as will induce equity to vacate a judgment. The court then determined [l.c. 287[3]] that under those circumstances, the effect of the scheme and conspiracy of the lawyer at the outset of litigation to manage the trial fraudulently was such an

infraction of ethical duty as to transcend injury to the adverse litigant only, but was an affront to the administration of justice. Such a judgment was not allowed to stand. The motion the Chapmans present plead no comparable rationale.

The judgment is affirmed.

All concur.

---

shows, in fact, that Chapman acknowledged that the signatures on some of those instruments he now says were fraudulent were his own. Thus, it was open to the Chapmans to

not only discover the authenticity of the signatures before trial, but also at the trial—as diligent practice expects.